**GENERAL ELECTRIC COMPANY, a New York corporation, Plaintiff,**

**v.**

**INDUSTRA PRODUCTS, INC., an Indiana corporation, Statomat–Globe, Inc., an Ohio corporation, and Ransburg Corporation, an Indiana corporation, Defendants.**

**Civ. No. F 87–50.**

United States District Court, N.D. Indiana, Fort Wayne Division.

April 20, 1988.

N. Reed Silliman, Fort Wayne, Ind., Eric C. Cohen, Chicago, Ill., Ralph E. Krisher, Jr., Fort Wayne, Ind., for plaintiff.

Steven P. Handler, Chicago, Ill., William F. McNagny, Fort Wayne, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Plaintiff, General Electric Company (G.E.) has moved this court to disqualify defendants' counsel, the law firm of McDermott, Will and Emery of Chicago, Illinois and defendants' former counsel, Jeffers, Hoffman & Niewyk of Fort Wayne, Indiana. A hearing was held in open court in South Bend, Indiana on February 11, 1988 in which both parties summarized their respective positions on this matter. In addition, plaintiff has filed over one thousand (1000) pages of briefs, affidavits, depositions, and other exhibits, and defendants have filed two responsive briefs and several affidavits and exhibits. The record is *more* than adequate to determine the issue of disqualification at this time without any need for further discovery. For the reasons set forth below, plaintiff's motion is DENIED.

### I.

#### Facts

The merits of this case involve a dispute over patents for devices for the mechanical insertion of phase paper into certain stator assemblies. Apparently such insertion had historically been performed manually. Three issued patents and one pending patent are involved:

1. General Electric's United States Patent No. 4,276,689 (hereinafter " '689 patent");

2. Industra's United States Patent No. 4,565,743 (hereinafter " '743 patent");

3. Industra's United States Patent No. 4,566,180 (hereinafter " '180 patent");

4. Industra's application for a patent, United States Serial No. 472,718 (hereinafter " '718 application).

Plaintiff G.E. claims that its '689 patent is infringed by defendant Industra's '743 patent, '180 patent and '718 application. Two law firms are involved in G.E.'s disqualification motion. The first, Jeffers, Hoffman & Niewyk (hereinafter "Jeffers firm"), has withdrawn its representation of defendants in this case. The other firm is defendants' current counsel, McDermott, Will and Emery (hereinafter "McDermott firm"). For purposes of this opinion, it is necessary to familiarize the reader with the attorneys involved. The attorneys from the Jeffers firm who play (or have played) a role in this drama are the three current partners, Jeffers, Hoffman and Niewyk. The attorneys from the McDermott firm who have been involved are Schermer, Cox and Handler. Two in-house attorneys from G.E. should also be mentioned as they, too, have played a part: they are Stoudt and Krisher.

The disqualification motion is based on somewhat unique facts. The Jeffers firm has done work for defendant Industra[1] for many years. Industra first retained the Jeffers firm to do its patent work in the mid–1960's. G.E. first retained the Jeffers firm in the late 1960's or early 1970's. At that time G.E. agreed and understood that Industra had to approve the work the Jeffers firm would do for G.E. Industra approved as long as there were no conflicts. Transcript of Feb. 11, 1988 court hearing [hereinafter "transcript"], p. 20.

In 1980, when Krisher of G.E. suffered a heart attack and had to miss work for several months, G.E. asked the Jeffers firm to draft an amendment to a patent application Krisher had filed in 1979. Hoffman was the attorney who drafted the amendment. To aid him, G.E. turned over its entire legal file on the application which

---

1. The three named defendants in this case, Industra Products, Inc., Statomat-Globe, Inc. and Ransburg Corp. will hereinafter collectively be referred to as Industra. Industra and Statomat-Globe are, in fact, subsidiaries of Ransburg.

was to become the '689 patent. Plaintiff's Memorandum in Support of its Motion to Disqualify [hereinafter "plaintiff's memorandum"], p. 5.

In 1981, several months after Hoffman finished that work, the Jeffers firm began work on the first of the three Industra patents at issue, the '743 patent. Hoffman did no substantive work on this or on the '180 patent or the '718 application. Hoffman deposition, p. 27. He claims that he does not, in fact, deal with Industra at all. *Id.* at p. 87. His name has, however, appeared on certain papers filed with the Patent and Trademark Office (hereinafter "PTO") and with this court because of his position as office manager and partner. *Id.* at p. 28; plaintiff's exhibits 19, 20 and 21.

Anthony Niewyk first went to work for the Jeffers firm in 1984. The '743 patent was drafted and prosecuted before Niewyk joined the firm by Jeffers and Robert Irish (now deceased). Jeffers deposition, p. 19; plaintiff's exhibit 6. Niewyk, however, was primarily responsible for the '180 patent and the '718 application. Jeffers deposition, p. 20; Niewyk deposition, p. 144. Hoffman, as noted above, was not involved in the drafting and prosecution of the Industra patents. He also has not been involved in the interference proceeding for the '718 application.

According to plaintiff, it first became aware of Industra's alleged infringement of the '689 patent in November, 1985. Plaintiff's memorandum, p. 9. At that time, Krisher wrote a letter to defendant which charged Industra with patent infringement. Krisher affidavit, p. 3. A series of meetings followed between the G.E. attorneys and the Jeffers firm attorneys as both sides attempted to settle the dispute. Jeffers deposition, p. 23–40; plaintiff's memorandum, p. 10; Krisher affidavit, p. 3–4; Stoudt affidavit, p. 304. The settlement negotiations were unsuccessful and G.E. filed this lawsuit in February, 1987. Industra retained the McDermott firm as

its counsel in this lawsuit, and retained the Jeffers firm as local counsel.

Either during the latter part of the settlement negotiations or soon after G.E. filed suit, Stoudt and Jeffers had a conversation in which it was mentioned that Niewyk of the Jeffers firm would be handling this lawsuit. Stoudt affidavit, p. 4–5; Jeffers deposition, p. 65–66. Stoudt claims that it was his understanding that *only* Niewyk would be involved. Stoudt affidavit, p. 4–5; Jeffers affidavit, p. 74.

In August of 1987, G.E. received a copy of defendants' Motion to Compel which was signed by Hoffman. Stoudt affidavit, p. 5; Krisher affidavit, p. 5. Both Stoudt and Krisher claim that that was the first indication they had of Hoffman's involvement in both the '689 patent and in this lawsuit. Krisher proceeded immediately to send a letter to Jeffers and Hoffman asking them to return all G.E. files to him, including any files relating to the '689 patent. Krisher affidavit, p. 6. That letter was dated August 12, 1987. Plaintiff's exhibit F. On the same day, G.E.'s trial counsel, Jerold Schnayer, wrote a letter to Niewyk requesting the withdrawal of the Jeffers firm from representation in the lawsuit. Plaintiff's exhibit G; Krisher affidavit, p. 6. In a letter dated August 24, 1987 from Niewyk to Krisher, G.E. was notified that the Jeffers firm would immediately withdraw from representing the defendants in the lawsuit numbered F87–00050.[2] Plaintiff's exhibit 1; Defendant's exhibit B. The withdrawal of the Jeffers firm was filed with this court on September 1, 1987. But the problems did not end there. Apparently, the McDermott firm, which continues to represent defendants, has had continued communications with certain members of the Jeffers firm regarding this lawsuit. G.E. discovered that Niewyk had been present at two separate meetings between McDermott firm attorneys and third-party witnesses after Keith Witwer, one of those witnesses, was deposed. G.E.'s trial counsel, Sidney Katz, wrote a letter dated De-

---

**2.** There is a second lawsuit pending in this court involving the same parties, numbered F 87–00051. That suit involves breach of contract and negligence issues. The Jeffers firm is still involved in that lawsuit.

cember 24, 1987 which stated that the McDermott firm might have to withdraw due to its continued contact with the Jeffers firm. Plaintiff's exhibit 23. Steven Handler, of the McDermott firm wrote back on December 30, 1987, denying any wrongdoing and asserting the firm's right to talk to the Jeffers firm attorneys. Plaintiff's exhibit 23. After receiving this response, G.E. filed a Motion to Disqualify Defendants' Counsel. G.E. then deposed Jeffers, Niewyk and Hoffman and allegedly discovered several other instances of forbidden communications between the two firms. G.E. cites the following as examples of such communications:

1. Niewyk admitted he had discussions with members of the McDermott firm concerning the validity or possible infringement of the '689 patent (but not concerning the preparation and/or prosecution of that patent) prior to the Jeffers firm's withdrawal. Niewyk deposition, p. 107.

2. Niewyk stated that he had discussed meetings he had had with Krisher and Stoudt regarding G.E.'s charge of infringement with members of the McDermott firm before the Jeffers firm's withdrawal. Niewyk deposition, p. 108.

3. Niewyk admitted that prior to the Jeffers firm withdrawal, he had, he believed, discussed the interference proceeding with members of the McDermott firm. Niewyk deposition, p. 125.

4. Niewyk testified that he and Schermer of the McDermott firm, had discussed a potential conflict of interest at the commencement of the lawsuit. Niewyk deposition, pp. 109–110.

5. Niewyk had discussed another G.E. patent with Schermer after the Jeffers firm withdrawal. He did not know, however, how that patent was relevant to this lawsuit. Niewyk deposition, pp. 141–143.

6. Niewyk was at a meeting at an Industra facility to discuss the interference proceeding with an Industra employee and members of the McDer-

mott firm were present. This occurred after the withdrawal. Niewyk deposition, pp. 145–146.

7. On August 12, 1987, Krisher wrote Hoffman and Jeffers a letter which instructed the Jeffers firm not to discuss their work on the '689 with anyone. Hoffman told Schermer of the McDermott firm that Krisher had advised him (Hoffman) that he had drafted the amendment to the '689 patent for G.E. and then had asked for the file. Hoffman affidavit, pp. 55–7. G.E. claims that Hoffman's conversation with Schermer violated an attorney-client privilege between Hoffman and Krisher. Plaintiff's Memorandum, p. 16.

8. When G.E. took Jeffers' deposition, he brought with him some documents relating to the case. Cox, of the McDermott firm, had possession of those documents at the deposition. Plaintiff's Memorandum, p. 16. Cox and Jeffers have both stated under oath that Jeffers merely had handed the documents to Cox to carry in her briefcase on the way to the deposition because Jeffers did not have his briefcase with him. Cox did not look at the documents (lists of matters the Jeffers firm had handled for G.E. in the past). Cox affidavit, defendant's exhibit H; Jeffers deposition, pp. 12–13.

The attorneys from the Jeffers firm and the McDermott firm, on the other hand, assert that no member of the McDermott firm has ever communicated with any member of the Jeffers firm regarding specific work done for G.E.

## II.

### Legal Analysis

■ G.E. first moved this court to disqualify the Jeffers firm. The motion was made in spite of the fact that the Jeffers firm withdrew voluntarily at G.E.'s request. Apparently, the purpose behind the motion is, as G.E.'s trial counsel Schnayer stated while deposing Jeffers, "... to get a

disqualification so they don't work on the case." This court, however, will not disqualify a firm which has formally withdrawn. It can be concluded with virtual certainty, however, that the Jeffers firm *would have* been disqualified had it declined to withdraw, for it had represented G.E. previously in a substantially related matter. The law on disqualification in the Seventh Circuit is very clear under such circumstances. *See, e.g., Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263 (7th Cir.1983).

The interesting question which remains is whether the McDermott firm must be disqualified for its past and continuing association in this case with the "tainted" Jeffers firm. Although this specific situation has not yet been addressed in this circuit, this court has carefully scrutinized the case law in this and other circuits regarding disqualification, and, in light of the unusual facts of this case, has concluded that G.E.'s motion to disqualify the McDermott firm must be DENIED.

■ G.E. has cited, as the primary authority in support of its motion, *Fund of Funds v. Arthur Andersen & Co.,* 567 F.2d 225 (2d Cir.1977). In that case, counsel was disqualified because of its association with disqualified co-counsel. This court concedes that the *Fund of Funds* case has a very similar fact pattern in some respects. However, the court in that case acknowledged that the general rule was that a co-counsel relationship alone would not warrant disqualification. *Id.* In that case, co-counsel was disqualified due to the "extraordinary, *sui generis* facts underlying this action ...." *Id.* In many significant ways, this case is factually different from *Fund of Funds.* Therefore, the fact that co-counsel was disqualified in *that* case does not necessarily control this court's decision in *this* case. Of even greater significance is the fact that, since the *Fund of Funds* case was decided, the Seventh Circuit has developed its own line of cases on attorney disqualification which must finally control this court's decision. The Seventh Circuit judges took great pains to create clear precedent in this area.

This court is required to follow Seventh Circuit guidelines even though these particular facts are unique and have not yet been addressed in this circuit. To rely solely on *Fund of Funds* simply because the facts are similar would be inappropriate. Besides, in the final analysis, *Fund of Funds* stands for the proposition that each case must be examined in light of its own peculiar facts. Moreover, the Federal Circuit, which has jurisdiction over any potential appeal of this patent case, has determined that an attorney disqualification order in a district court will be reviewed by the Federal Circuit in light of the law of the circuit in which the district court sits. *Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 836 F.2d 1332, 1335 (Fed.Cir.1988); *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574–76 (Fed.Cir.1984). For all these reasons, this court will analyze this case under the law of the Seventh Circuit alone.

■ The Seventh Circuit first stresses that disqualification is a drastic measure which should not be imposed unless absolutely necessary. *Panduit,* 744 F.2d at 1577 *citing Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir.1982). Moreover, motions for attorney disqualification must be reviewed with extreme caution to avoid their misuse as techniques of harassment. *Id.* The court must be "guided by the awareness of the delicate balance which must be maintained between the right of an individual to retain counsel of his free choice and the necessity that the court uphold ... ethical standards." *Panduit,* 744 F.2d at 1577 *citing Whiting Corp. v. White Machinery Corp.,* 567 F.2d 713, 715 (7th Cir.1977).

Disqualification motions, such as the one presented here, are usually based on alleged violations of Canons 4 and 9 of the American Bar Association's Code of Professional Responsibility. Disqualification of counsel is but one remedial measure available to a court in its attempt to insure that Canons 4 and 9 are upheld. *Freeman,* 689 F.2d at 721. Canon 4 states that "a lawyer should preserve the confidences and secrets of a client," and Canon 9 provides

that "a lawyer should avoid even the appearance of professional impropriety."

The Seventh Circuit has developed a series of steps which it uses in reviewing attorney disqualification motions based on these two Canons. First, the movant must show that a substantial relationship exists between the subject matter of the prior and present representations.[3] *See, e.g., Panduit,* 744 F.2d at 1577; *Schiessle v. Stephens,* 717 F.2d 417, 420 (7th Cir.1983); *LaSalle National Bank v. County of Lake,* 703 F.2d 252, 255 (7th Cir.1983). If a substantial relationship is found to exist, the court will then determine whether confidences relating to the subject matter were shared. The court begins by presuming confidences were indeed shared. In the case of a law firm which received confidences from client "A" in the prior representation and which is now representing client "B" in a substantially related matter against client "A", there is an irrebuttable presumption of shared confidences and the law firm must be disqualified. *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1267 (7th Cir.1983) (law firm not permitted to change sides even if "Chinese wall" is set up). At least one exception to this rule was carved out in *Analytica:*

> There is an exception for the case where a member or associate of a law firm (or government legal department) changes jobs, and later he or his new firm is retained by an adversary of a client of his former firm. In such a case, even if there is a substantial relationship between the two matters, the lawyer can avoid disqualification by showing that effective measures were taken to prevent confidences from being received by whichever lawyers in the new firm are handling the new matter. (citations) The exception is inapplicable here; the firm itself changed sides.

*Analytica,* 708 F.2d at 1267.

In the *Panduit* case, the Federal Circuit found that the *Analytica* "showing that effective measures were taken to prevent confidences from being received" did not necessarily require a screening procedure (also known as a "Chinese wall"), but that evidence of voluntary screening procedures is simply one type of evidence that may rebut the presumption of shared confidences. *Panduit,* 744 F.2d at 1580–81. So, in the case of an attorney who has changed firms, there is a *rebuttable* presumption of shared confidences.

■ With the above tenets in mind, this court will attempt to apply the law to the unusual facts of this case. The issue is whether the confidences obtained by Hoffman in the course of his work on the '689 patent should be imputed to Hoffman's firm's co-counsel, the McDermott firm. This court believes that, under the Seventh Circuit's analysis, co-counsel should be presumed to have shared confidences with the tainted firm. However, that presumption *is rebuttable.* This court reaches that conclusion for several reasons. First, it only makes sense that if the presumption that the knowledge possessed by one attorney in a law firm is shared with the other attorneys in the firm is rebuttable, then it follows that the knowledge possessed by a law firm (or member of that firm) should be presumed to be shared with the firm's co-counsel and that presumption should also be rebuttable.[4] *See LaSalle,* 703 F.2d

---

**3.** Normally, the Seventh Circuit uses a three-step analysis to determine whether a "substantial relationship" exists. Such an analysis is unnecessary when, as here, the relationship is obvious: the issues in this case directly involve the '689 patent. The three-step analysis is outlined below:

> First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client. *LaSalle National Bank v. County of Lake,* 703 F.2d 252, 255–56 (7th Cir.1983) *citing Westinghouse Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 225 (7th Cir.1978); *Novo Terapeutisk Laboratorium v. Baxter Travenol Labs, Inc.,* 607 F.2d 186, 195 (7th Cir.1979) (en banc).

**4.** The presumption, however, is limited, in the case of a co-counsel who is not a member of the same firm, to knowledge of the subject matter which co-counsel are involved in together.

at 252 *citing Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710–11 (7th Cir.1976) and *Novo Terapeutisk Laboratorium v. Baxter Travenol Labs, Inc.*, 607 F.2d 186, 197 (7th Cir.1979).

A second reason that the presumption of shared confidences between co-counsel should be rebuttable is that, under all this detailed analysis lies the Seventh Circuit's basic view "that attorney disqualification as a prophylactic device should not be imposed unless 'absolutely necessary'. We must not give undue dignity to a procedural tool and fail to recognize the realities of the particular situation at hand." *Panduit*, 744 F.2d at 1581. In other words, the facts which are peculiar to the case under consideration must be taken into account. This illustrates the need for a rebuttable presumption rather than a presumption which cannot be rebutted no matter what the particular circumstances.

Also, because here this court is dealing with two separate firms as opposed to members of the same firm, it is disinclined to conclude that shared confidences must be irrebuttably presumed. That would simply be carrying things too far. The factual setting of this case is significantly different than in *Analytica* in which Judge Posner applied a rigid, irrebuttable presumption standard. Here, there are *two* distinct law firms involved. Also, attorney Niewyk, who has performed most of the work on the Industra patents was not even a member of the Jeffers firm when it worked on the G.E. '689 patent. Furthermore, Niewyk is not a member of the law firm which G.E. seeks to disqualify. In *Analytica*, Posner asserted that the irrebuttable presumption standard applied to a single law firm that changes sides. The McDermott firm has not changed sides. No member of that firm has represented G.E. in a substantially related matter. The facts in this case, therefore, do not compel a mechanical application of the exceptional irrebuttable presumption concept to disqualify counsel. This result in no way depreciates the necessity of giving full-blown applica-

tion to the *Analytica* standard where it applies. However, it is this court's conclusion that *Analytica* does not apply here. In a situation such as this, counsel must be given the opportunity to show that no confidences were shared between it and the tainted firm.

Finally, in this court's opinion, an irrebuttable presumption that a tainted firm shares confidences with its co-counsel strongly indicates that an attitude exists in the legal profession which assumes that lawyers act unethically. The need to prevent any appearances of impropriety must be balanced against a client's right to choose its own counsel. *Panduit*, 744 F.2d at 1576. Likewise, judges must realize that too much disqualification may have the effect of creating public distrust for the legal profession and encouraging "vexacious tactics." *Id.* at 1577. A rebuttable presumption, on the other hand, gives lawyers the opportunity to "redeem" themselves in spite of the fact that circumstances create an *appearance* of impropriety (which must, of course, be avoided under Canon 9 of the Code of Professional Responsibility).

■ The question that remains is whether the McDermott firm has satisfactorily rebutted the presumption that it received confidential information concerning the '689 patent from the tainted Jeffers firm. This court believes that it has, indeed, rebutted that presumption. The evidence supporting this conclusion can be summarized as follows:

1.  Hoffman wrote an amendment to the '689 patent and, during that representation, was privy to confidential information relating to that patent. However, Hoffman has stated under oath that he remembers virtually nothing about that work.

2.  Other members of the Jeffers firm have stated under oath that they did not participate in the drafting of the '689 amendment and, if they received any confidential information

---

There certainly should be no presumption that lawyers temporarily working together on one

particular matter share all the confidences they possess in other matters.

from Hoffman concerning his work, they have no recollection of it.

3. The McDermott firm attorneys have stated under oath that they received no confidences from the Jeffers firm concerning the '689 patent.

4. Stoudt of G.E. expressly consented to Niewyk of the Jeffers firm acting as local counsel for defendants in the lawsuit. Stoudt claims that it was his understanding that Niewyk *alone* would be involved. Indeed, Niewyk *was* in charge of the case and any involvement by other members of the Jeffers firm was procedural in nature. However, as noted before, this circuit imputes knowledge of one member of the firm to all members. It is common knowledge that members of a law firm discuss cases among themselves. It was, therefore, not reasonable for Stoudt to assume that Niewyk could be "separated" from the rest of the firm in the course of his representing Industra.

5. Niewyk was not a member of the Jeffers firm when Hoffman worked on the amendment to '689. He did not join the firm until approximately four years later. It is highly unlikely that any confidential information Hoffman obtained in 1980 would have been passed along to Niewyk in 1984.

6. The conversations which G.E. has cited as supportive of its allegation that confidences were shared (*see supra*), are totally unconvincing. G.E. has failed completely in its attempt to show actual unethical behavior. There is nothing in the record to support such a claim.

Apart from the analysis above which is based primarily on Canons 4 and 9 of the Code of Professional Responsibility, there are certain factors unique to this case which finally convince this court that the McDermott firm should not be disqualified. First, there would be great prejudice to defendants in this case if the McDermott firm was disqualified. That firm has worked on this lawsuit for over a year. The record in this case already consists of five full volumes of filings made up of more than 160 docketed items, not to mention one box full of plaintiff's exhibits. To disqualify a firm which has already committed so much time to this case could only be harmful to defendants. Second, *any* attorney representing defendants in the present case will, of necessity, have to consult with Niewyk regarding the Industra patents and the interference proceeding. Conversely, Niewyk has an interest in any information or models developed in this case which have an impact on the interference proceeding which is his responsibility. This court is satisfied that the communications between the McDermott firm and the Jeffers firm have been limited to these matters and will continue to be so limited.

Such practical reasons should be a part of any review of a motion to disqualify, for courts must balance any appearance of impropriety against factors which indicate that disqualification of counsel may be unjust in that particular situation. Of course, actual unethical behavior will not and should not be tolerated.

This court is convinced that under well-established Seventh Circuit case law and for the practical reasons set forth above, plaintiff G.E.'s motion to disqualify the McDermott firm must now be DENIED. G.E.'s motion to disqualify the Jeffers firm is MOOT and, therefore, will not be ruled upon. It goes without saying that the McDermott and Jeffers firms must continue to avoid any discussion of Hoffman's work on the '689 patent. The Jeffers firm is hereby ORDERED to refrain from discussing any matter relating to its work on the '689 patent with the McDermott firm and to disassociate itself from the McDermott firm to the greatest extent possible with regards to this lawsuit.

Finally, G.E. is ORDERED to pay all costs incurred in connection with the defense of this motion. This court RESERVES ruling on attorneys' fees incurred in connection with this motion. IT IS SO ORDERED.