**FLO–CON SYSTEMS, INC., et al., Plaintiffs,**

v.

**SERVSTEEL, INC., et al., Defendants.**

**Civ. No. H86–469.**

United States District Court,
N.D. Indiana,
Hammond Division.

April 25, 1990.

Robert J. VanDer Wall, Miami Lakes, Fla., Frederick H. Link, Hammond, Ind., Charles A. Shifley, Chicago, Ill., for plaintiffs.

Randall J. Nye, Beckman, Kelly & Smith, Hammond, Ind., L. Lawton Rogers, III, Alexandria, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

LOZANO, District Judge.

This matter is before the Court on the Motion to Disqualify filed by the defendants, Servsteel, Inc. and Albert J. McQuillen, Jr. (hereafter collectively "Servsteel"), filed March 20, 1990. On March 23, 1990, following oral argument on this Motion, this Court granted the defendants' Motion. This Memorandum Opinion and Order sets forth the basis for that ruling.

## FACTS

The plaintiff,[1] Flo–Con Systems, Inc. ("Flo–Con") filed this patent infringement action against Servsteel on June 6, 1986. On December 7, 1987, Flo–Con filed a patent infringement action against the Leco Corporation in the United States District Court for the Southern District of Georgia, Augusta Division ("Leco case"). Servsteel is not a party to the Leco case, but both cases involve the same patent.

The law firm of Webb, Burden, Ziesenheim and Webb, P.C. ("Webb firm"), by Attorney David Hanson, represented Servsteel in the patent litigation with Flo–Con from July, 1986 through December 21, 1987.[2] In March, 1988, after the Webb firm had withdrawn as counsel of record for Servsteel, Attorney Kent Baldauf ("Baldauf") became a member of the Webb firm. Baldauf, who had represented Vesuvius Crucible Company, Inc. ("Vesuvius") since 1986, continued to advise and represent Vesuvius in patent matters after he became a member of the Webb firm.

While a member of the Webb firm and at Vesuvius' request, Baldauf conducted a study of all the patents owned and licensed by Flo–Con. In the course of this study, Baldauf learned of Flo–Con's pending suit against Servsteel and of the Webb firm's involvement in that suit. At that time, a "Chinese Wall" was established within the Webb firm, isolating Baldauf from all attorney files concerning Servsteel. In fact, these files were sent to dead storage at a location remote from the Webb firm offices. Vesuvius ultimately purchased Flo–Con in December, 1989.

On February 15, 1990, counsel for Flo–Con notified Servsteel of Vesuvius' purchase of Flo–Con, of Baldauf's employment with the Webb firm and of Baldauf's involvement in Vesuvius patent matters. Flo–Con further explained that while Baldauf would remain advised of the court file, on-going discovery and trial of the Servsteel case, Baldauf was expected to be more active in the Leco case. On February 19, 1990, Servsteel requested that Flo–Con reconsider its intention to obtain counsel from the Webb firm. Flo–Con, on March 1, 1990, refused to reconsider its decision to use Baldauf and the Webb firm. As a result, Servsteel filed its Motion to Disqualify both Baldauf and the Webb firm from the patent litigation before this Court and in the Leco case.

## DISCUSSION

Canon 4 of the American Bar Association's Code of Professional Responsibility ("CPR") provides that: "a lawyer should preserve the confidences and secrets of a client." Canon 9 of the CPR provides that "a lawyer should avoid even the appearance of professional impropriety." A motion for attorney disqualification, which is usually based on an alleged violation of these canons, must be viewed with extreme caution to avoid its misuse as an instrument of harassment. *General Electric Co. v. Industra Products, Inc.*, 683 F.Supp. 1254, 1258 (N.D.Ind.1988) (citing *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–76 (Fed.Cir. 1984) and *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982)). The Court must maintain the balance between the right of the individual to retain counsel of his free choice and the necessity that ethical standards be upheld. *General Electric Co.*, 683 F.Supp. at 1258 (citing *Panduit*, 744 F.2d at 1577 and *Whiting Corp. v. White Machinery Corp.*, 567 F.2d 713, 715 (7th Cir.1977)). Disqualification is a drastic measure which should not be imposed unless absolutely necessary. *General Electric Co.*, 683 F.Supp. at 1258 (citations omitted).

1. United States Steel ("USS") Corporation (now "USX") and USS Engineers and Consultants, Inc. (now "USX Engineers and Consultants, Inc.") joined this lawsuit as parties-plaintiff on March 10, 1987.

2. The Webb firm, by Attorney Hanson, entered an appearance in this case on behalf of Servsteel on July 8, 1986. On December 15, 1987, the Webb firm, by Attorney Hanson, filed a Motion for Leave to Withdraw as counsel of record in this case. The Court, by the Honorable James T. Moody, granted the Webb firm and Attorney Hanson leave to withdraw as counsel of record for Servsteel on December 21, 1987.

■ The United States Court of Appeals for the Seventh Circuit has developed an analysis for the disqualification of an attorney where an alleged conflict exists between representation of a former client and that of a current client. Initially, a movant must establish that a substantial relationship exists between the subject matter of the prior representation and that of the present. *General Electric Co.*, 683 F.Supp. at 1259. Whether the subject matter of two representations are substantially related turns on whether a law firm "could have obtained confidential information in the first representation that would have been relevant in the second." *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir.1983). "[T]he determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought." *Westinghouse Elec. Corp. v. Gulf Oil Corp. and United Nuclear Corp.*, 588 F.2d 221, 224 (7th Cir. 1978). In fact, "[e]ven the briefest conversation between a lawyer and a client can result in the disclosure of confidences. It is the relationship between the prior representation and the present litigation that must be evaluated rather than simply the duration and extent of the past representation." *Novo Terapeutisk, Etc. v. Baxter Travenol Lab.*, 607 F.2d 186, 195 (7th Cir. 1979) (rehearing *en banc*). Relevance with regard to subject matter should "be measured against the potential avenues of proof and not against the expected." *Westinghouse Elec. Corp.*, 588 F.2d at 226.

If a substantial relationship exists, the Court must then determine whether client confidences relating to the subject matter were shared. *General Elec. Co.*, 683 F.Supp. at 1259. In making this determination, a court must begin with the presumption that confidences were, in fact, shared. *Id.* This presumption may or may not be rebuttable, depending on the particular circumstances.

■ Where one attorney changes law firms and later finds that his new firm represents an adversary of a client of his former firm in a substantially related matter, that attorney may rebut the presumption and avoid disqualification if he can show that effective measures were taken to prevent the sharing of confidences. *Analytica, Inc.*, 708 F.2d at 1267. Conversely, where a law firm which received confidences from one client now represents a second client in a substantially related matter and those clients now oppose each other, the presumption that the confidences were shared becomes irrebuttable and the law firm must be disqualified. *General Elec. Co.*, 683 F.Supp. at 1259 (citing *Analytica, Inc.*, 708 F.2d at 1267). A law firm which changes sides must be disqualified, whether or not it set up screens or "Chinese Walls", and regardless of whether confidential information was actually exchanged. *Analytica, Inc.*, 708 F.2d at 1267–68. Moreover, the Seventh Circuit, in *Analytica, Inc.*, did not limit its requirements of disqualification to the same legal action. Instead, a fair reading of that case reveals that disqualification may be required in conflicts of representation with regard to any *substantially related* matter, lest the prior client's confidences be disclosed inappropriately. See, *Analytica, Inc.*, 708 F.2d at 1266–68.

■ Servsteel contends that the subject matter of the Webb firm's prior representation of Servsteel in its patent litigation with Flo–Con, is substantially related to the subject matter of the Webb firm's current representation of Flo–Con in that litigation as well as in the Leco case. Servsteel further contends that the presumption that confidences were shared is irrebuttable and requires that Baldauf and the Webb firm be disqualified from both cases. Conversely, Flo–Con contends that, although the subject matter of the two representations is not substantially related, even if it were, the presumption of shared confidences is rebuttable. Lastly, Flo–Con contends that Servsteel's motion is dilatory in nature.

The subject matter of the Webb firm's prior representation of Servsteel bears a substantial relationship to the subject matter of the Webb firm's current representa-

tion of Flo–Con. Information obtained by the Webb firm while representing Servsteel in the patent infringement dispute with Flo–Con would be relevant not only in the Webb firm's representation of Flo–Con regarding the Servsteel action, but also to representing Flo–Con in the Leco case. Flo–Con cannot deny its involvement in both suits, and Flo–Con does not disclaim that both the Leco and Servsteel disputes surround to some extent the same Flo–Con patent. Even if this were not so, the Webb firm could still disclose confidential information relating to Servsteel's strategy and general patent matters to Flo–Con while representing Flo–Con in either patent action. Consequently, Flo–Con's assertions that the subject matter of the Webb firm's initial representation of Servsteel is not substantially related to the Webb firm's representation of Flo–Con, in both the Servsteel and Leco actions, are not persuasive.

■ Furthermore, the Webb's firm's representation of Flo–Con in both the Servsteel and Leco actions raises the irrebuttable presumption of shared confidences. The Webb firm, by Hanson, represented Servsteel in the current patent dispute from its commencement until December, 1987. This Court must presume that, during that time the Webb firm received confidential information with regard to Servsteel's defense in the action. *Novo Terapeutisk, Etc.*, 607 F.2d at 196. Now, through the services of Baldauf, the Webb firm represents Flo–Con with regard to its patents. Although Baldauf did not join the Webb firm until after its representation of Servsteel ceased, and despite the fact that Baldauf and the Webb firm originally represented Vesuvius before it purchased Flo–Con, the Webb firm is currently involved in Flo–Con patent matters.[3] The close cooperation between Flo–Con's attorneys in both actions broadens both the opportunity for disclosure of confidential information and the appearance of impropriety. Accordingly, the irrebuttable presumption of

shared confidences articulated in *Analytica, Inc.* mandates that Baldauf and the Webb firm be disqualified from representing Flo–Con in either the Servsteel or Leco actions.

It is irrelevant whether Baldauf obtained Servsteel's confidences and used them against Servsteel, or whether different people within the Webb firm, namely Baldauf and Hanson, handled the two matters and avoided discussing them. *Analytica, Inc.*, 708 F.2d at 1266. Likewise, Flo–Con's assertion that Hanson lacked any knowledge of the Leco litigation during his representation of Servsteel is irrelevant. While Flo–Con's construction of a "Chinese Wall" is admirable and an actual breach of client confidence has not been asserted, Flo–Con's endeavors are not relevant where the Webb firm itself switched sides. *Analytica, Inc.*, 708 F.2d at 1267–68.

In addition, Flo–Con cannot rightly complain that Servsteel delayed its filing of this Motion to Flo–Con's detriment. Although Flo–Con was aware of this conflict as early as December, 1989, when Baldauf discovered it, Flo–Con did not inform Servsteel of Flo–Con's use of the Webb firm until February 15, 1990. Servsteel's response on February 19, 1990 clearly was not delayed. Flo–Con's refusal to reconsider its decision to sue Baldauf and the Webb firm, and Servsteel's Motion to Disqualify followed shortly after. Therefore, Flo–Con's assertion that Servsteel's Motion is dilatory in nature is meritless.

As a final note, this Court must balance the interests of Flo–Con, Servsteel, and the public at large when ruling on a motion to disqualify. See, *U.S. v. Goot*, 894 F.2d 231, 236 (7th Cir.1990). The potential prejudice to Servsteel, should Baldauf and the Webb firm continue to participate in these actions is great indeed. Allowing the Webb firm to continue to participate would risk delivery of over a year's worth of Servsteel's confidences directly into the hands of its adversary. This Court also notes that Flo–Con has litigated the Servsteel and Leco

---

**3.** Flo–Con likens its situation to that in *Nova Terapeutisk, Etc.*. In *Novo Terapeutisk, Etc.*, a partner who left a firm and took with him one of that firm's clients, later found this client involved in a dispute against a party represented by the partner's former firm. That case is factually distinguishable from the present action, and does not apply. See 607 F.2d at 194.

actions without the assistance of Baldauf and the Webb firm until December, 1989 when Vesuvius purchased Flo–Con. Thus, Flo–Con's loss of Baldauf and the Webb firm's representation in these actions hardly creates a substantial hardship. Finally, the public has a great interest in assuring that attorneys observe ethical standards, maintain client confidences and avoid the appearance of impropriety. The appearance of impropriety and the potential for prejudice to Servsteel far outweighs any potential benefit afforded Flo–Con by allowing the Webb firm to continue to participate in the Servsteel and Leco patent matters.

CONCLUSION

For the reasons stated in this opinion, Servsteel's, Motion to Disqualify is GRANTED and the Court ORDERS the following:

Mr. Baldauf and the law firm of Webb, Burden, Ziesenheim and Webb, P.C. are disqualified from the representation of Flo–Con, Inc. or Vesuvius with respect to both the lawsuit currently pending before the U.S. District Court in Augusta, Georgia, and the lawsuit currently pending before this Court under cause No. H86–469. This Court FINDS, based on the evidence, that the Augusta, Georgia lawsuit is substantially related to the case presently pending before this Court, Civil No. H86–469. Mr. Baldauf and the law firm of Webb, Burden, Ziesenheim, and Webb, P.C. will immediately cease their representation or counsel of Flo–Con, Inc. or Vesuvius in both of these matters. Flo–Con is forbidden from using any information in any forum which it received from Mr. Baldauf or the law firm of Webb, Burden, Ziesenheim and Webb, P.C. concerning the defendant, Servsteel, Inc., in the lawsuit currently pending before this Court under cause No. H86–469.