In the Matter of NEPHI RUBBER PRODUCTS CORP., Debtor.

**Bankruptcy No. 89–31476 HCD.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Oct. 17, 1990.

William I. Kohn, Michael B. Watkins, and Seth D. Linfield, South Bend, Ind., for Nephi Rubber Products Corp.

Leon Kaminski, Newby, Lewis, Kaminski & Jones, Laporte, Ind., for Jones Individually, Screw Machine, and Jones Enterprises, et al.

Elliott D. Levin, Rubin & Levin, Indianapolis, Ind., for Official Unsecured Creditors' Committee.

Alexander Edgar, South Bend, Ind., for Asst. U.S. trustee.

Dennis J. Lewis, Cohen & Grigsby, Pittsburgh, Pa., and Thomas P. Yoder, Barrett & McNagny, Ft. Wayne, Ind., for Robert G. Cypher and Cypher Co.

## MEMORANDUM OF DECISION

HARRY C. DEES, Jr., Bankruptcy Judge.

On August 2, 1990, Robert G. Cypher and The Cypher Company (collectively "Cyphers") filed their MOTION OF ROBERT G. CYPHER AND THE CYPHER COMPANY FOR DISQUALIFICATION OF DEBTOR'S COUNSEL. Thereafter, on Septem-

ber 4, 1990, Nephi Rubber Products Corp. ("Nephi"), the debtor herein, filed its VERIFIED OBJECTION AND PRELIMINARY RESPONSE OF NEPHI RUBBER PRODUCTS CORP., TO MOTION OF ROBERT G. CYPHER AND THE CYPHER COMPANY FOR DISQUALIFICATION OF DEBTOR'S COUNSEL. The court held an evidentiary hearing on Cyphers' motion and Nephi's objection thereto on October 15, 1990. Following presentation of the evidence and arguments, the court orally denied Cyphers' motion indicating that it would issue written findings of fact and conclusions of law concerning its decision.

### Jurisdiction

Pursuant to 28 U.S.C. § 157(a) and General Rule 45 of the Rules of the United States District Court for the Northern District of Indiana, this case has been referred to this court for hearing and determination. After reviewing the record, the court determines that the matter before the court is a core proceeding within the meaning of § 157(b)(2)(A). This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable to bankruptcy proceedings by Bankruptcy Rules 7052 and 9014.

### Background

Nephi filed its petition under Chapter 11 of the Bankruptcy Code on July 28, 1989. Terry M. Jones, Keith H. Jones, and K. Brian Jones (collectively "the Joneses") are shareholders, officers, and directors of Nephi. Robert G. Cypher also is a 50 percent shareholder, director, and former employee of Nephi. Mr. Cypher also is the principal shareholder of The Cypher Company, which is a trade creditor and trade debtor of Nephi. In addition to their positions with Nephi, the Joneses serve as shareholders, officers, and directors of Jones Enterprises, Inc., and Screw Machine Products, which are trade creditors of Nephi.

In their motion to disqualify, Cyphers argued that Barnes & Thornburg, the law firm which represents Nephi in these proceedings, has a conflict of interest and thus must be disqualified from serving as Nephi's counsel under 11 U.S.C. § 327. Specifically, Cyphers pointed to the fact that Barnes & Thornburg has represented seventeen creditors of Nephi's estate, including Caterpillar Tractor Company, Nephi's largest unsecured creditor, on other matters. Barnes & Thornburg also represents the Joneses in an unrelated matter. Cyphers argued that Barnes & Thornburg accordingly is not a "disinterested person" but rather "hold[s] or represent[s] an interest adverse to the estate." Cyphers' motion at 6 (quoting 11 U.S.C. § 327). Cyphers also alleged that Barnes & Thornburg's representation of Nephi violates Rules 1.7 and 1.9 of the American Bar Association's Rules of Professional Conduct.

At the hearing on this matter Nephi presented the testimony of Roman Iwanyshyn, who served as Cyphers' accountant, consultant and attorney (at times), and Robert G. Cypher. The witnesses testified that the shareholders of Nephi originally had managed their company by mutual agreement. On April 7, 1989, at a meeting of shareholders in La Porte, Indiana, however, the Joneses offered to buy Robert G. Cypher's stock in Nephi in order to become 100% shareholders of Nephi. David A. Haist of Barnes & Thornburg attended the meeting. According to Mr. Iwanyshyn and Mr. Cypher, Keith H. Jones indicated at the meeting that Mr. Haist represented the Joneses' interests. Mr. Cypher found the Joneses' offer to be unacceptable and rejected it.

Later, on July 28, 1989, Barnes & Thornburg filed the Chapter 11 petition on behalf of Nephi. Mr. Cypher testified that although he was a 50% shareholder in Nephi, he had no notice of the filing until August 1 or 2, 1989. In Mr. Cypher's view the Joneses filed the petition in order to "break a deadlock" among the shareholders and have used the bankruptcy proceeding to "trash" Nephi by purposely losing money and shifting product sales to their other companies. Mr. Cypher agreed that the Joneses are the controlling directors of Nephi indicating that on July 29, 1986, at a

Special Directors' Meeting he seconded the motion to elect K. Brian Jones as a director.[1] Mr. Cypher testified that he believes that the Joneses have the financial ability to take Nephi out of bankruptcy but have failed to do so. He also indicated that Barnes & Thornburg's representation of Nephi has harmed Nephi and its creditors by placing it in bankruptcy unnecessarily and by favoring the Joneses' interests.

Mr. Cypher and his counsel first raised the issue of Barnes & Thornburg's alleged conflict of interest in September of 1989. Both Mr. Cypher and Mr. Iwanyshyn agreed that they did not take any action concerning Barnes & Thornburg's alleged conflict any earlier although they became concerned about the problem at the first meeting of creditors when they became aware of some discrepancies in Nephi's schedules.[2] They did not object to Nephi's application to employ Barnes & Thornburg and did not object to Barnes & Thornburg's interim application for fees which the court approved.

William I. Kohn, counsel for Nephi, testified on behalf of Nephi. Mr. Kohn stated that he became involved with Nephi in the spring of 1989. At that time Nephi had no working capital and was seeking new financing. Mr. Kohn agreed that Barnes & Thornburg originally addressed its invoices to Screw Machine Products (a separate company owned by the Joneses) rather than Nephi. He explained that this practice is not unusual when a company has insufficient funds to pay attorney's fees. Barnes & Thornburg billed Screw Machine Products at the instruction of Nephi's board of directors. Mr. Kohn also indicated that the directors determined that it would be unfair to require Mr. Cypher to pay the expenses. Barnes & Thornburg was to bill Screw Machine Products for the services with the understanding that Screw Machine Products would add the sums to its unsecured trade balance with Nephi or forgive the amounts.

Mr. Kohn said that the focus of his representation of Nephi was to determine how to bring capital into the business in a manner which would be fair to all shareholders. He concluded that as the insiders of Nephi were its largest customers, Nephi had no real equity. Mr. Kohn indicated that the proposal which Barnes & Thornburg prepared on behalf of Nephi included three options: (1) converting the debt of Nephi to the Joneses to equity with the Joneses and their companies guaranteeing Nephi's obligations, paying Nephi's debt to Cyphers in full at confirmation, releasing Mr. Cypher's guarantees of Nephi's obligations, and negotiating a supply contract with Cyphers; (2) same as the first option except that Mr. Cypher's debt would be converted to equity with Cyphers guaranteeing Nephi's obligations, paying Nephi's debt to Joneses and their companies in full at confirmation, releasing the Joneses' and their companies' guarantees of Nephi's obligations, and negotiating of a supply contract with the Joneses and their companies; or (3) splitting of the proposal among the Joneses and Cyphers with Cyphers' and the Joneses' obligations being converted to equity and having both Cyphers and the Joneses guarantee Nephi's obligations in order to obtain financing for reorganization with the Joneses' excess equity being converted to preferred stock. (*See* Cyphers' Hearing Exhibit 7, which is a letter from Mr. Kohn to Thomas P. Yoder dated October 26, 1989.) Although Mr. Cypher originally selected two of the three options, the parties

---

1. The directors thus include the Joneses and Mr. Cypher.

2. At least some of these problems have since been corrected. William I. Kohn testified that his office inadvertently failed to include certain transactions involving both Mr. Cypher and the Joneses on the schedules. The schedules also failed to fully account for disposal of Nephi's facility known as the "eastern warehouse." Mr. Kohn said that he believed this issue had been resolved to Mr. Cypher's satisfaction. The schedules further did not completely address the issue of preferences among the insiders and their companies. Mr. Kohn testified that the issue of preferences may be irrelevant to the extent Nephi's plan of reorganization is a 100% plan. At the request of the Unsecured Creditors' Committee, Barnes & Thornburg, however, has run a check ledger identifying the gross amounts of possible preference payments to the Joneses and Cyphers (excluding any analysis of defenses allowed by the Code).

were unable to consummate the proposal. Mr. Kohn indicated that Nephi has pursued sources from which to obtain financing to reorganize and that Nephi should be in a position to submit a confirmable plan of reorganization within two weeks.

At the hearing the United States Trustee and the Official Creditors' Committee ("Committee") both voiced their objections to Cyphers' motion to disqualify Nephi's counsel. The Committee argued that it would be a "travesty" to disqualify Barnes & Thornburg at this stage of the proceedings when Nephi expects to present a plan making 100% payment to its creditors. The Committee submitted that the creditors and Nephi's estate have suffered no harm as a result of Barnes & Thornburg's representation of Nephi but would suffer great harm if the court removed them from this case. Although the United States Trustee admitted that he felt "uncomfortable" with many of the allegations which the Cyphers have made in this case and with Mr. Cypher's lack of information about the filing of Nephi's petition, he felt that disqualification is not required in this case and that Cyphers had failed to meet their burden of showing that Barnes & Thornburg holds an interest adverse to Nephi's estate.

### Discussion and Decision

Title 11 U.S.C. § 327 provides in relevant part:

> (a) ... [T]he trustee [or debtor in possession], with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee [or debtor in possession] in carrying out the trustee's [or debtor in possession's] duties under this title.

11 U.S.C. § 327(a) (Callaghan 1989) (references to debtor in possession added). Section 327(c) further provides that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee" *and* the court finds "an actual conflict of interest." 11 U.S.C. § 327(c) (Callaghan 1989). The legislative history to § 327(c) indicates:

> Section 327(c) represents a compromise between HR 8200 as passed by the House and the Senate amendment. The provision states that former representation of a creditor, whether secured or unsecured, will not automatically disqualify a person from being employed by a trustee [or debtor in possession], but if such person is employed by the trustee, the person may no longer represent the creditor in connection with the case.

124 Cong.Rec. H11091 (daily ed. Sept. 28, 1978); S17408 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini). *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 328 (1977) and S.Rep. No. 989, 2d Sess. 38 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Title 11 U.S.C. § 1107(b) further clarifies the standard for the debtor in possession's employment of professionals:

> (b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

11 U.S.C. § 1107(b) (Callaghan 1989).

As Nephi noted in its pre-hearing memorandum on disqualification standards, the United States Court of Appeals for the Seventh Circuit has determined that disqualifying counsel for a conflict of interest is a "drastic" remedy which should be employed with caution. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721–22 (7th Cir.1982). "[D]isqualification ... is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Id.* at 721. "[S]uch motions should be viewed with extreme caution for they can be misused as techniques of harassment." *Id.* at 722. *See also General Electric Co. v. Industra Products, Inc.*, 683 F.Supp. 1254, 1258 (N.D.Ind.1988).

■ The court must consider each potential disqualification case on its own particular facts in order to reach a fair result.

General Electric, 683 F.Supp. at 1258 (citing Fund of Funds v. Arthur Andersen & Co., 567 F.2d 225 (2d Cir.1977). In addition, "[t]he court must be 'guided by the awareness of the delicate balance which must be maintained between the right of an individual to retain counsel of his free choice and the necessity that the court uphold ... ethical standards.'" Id. (quoting Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1578 (Fed.Cir.1984), citing Whiting Corp. v. White Machinery Corp., 567 F.2d 713, 715 (7th Cir.1977)). The court believes that this rule should apply even when the "individual" is a corporation acting by its duly authorized representatives. A court also should keep in mind that disqualifying counsel is only one of the remedial protections which may be used to insure that the canons of professional responsibility are upheld. Id. (citing Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir.1982)). If a party will suffer great prejudice by disqualification of its counsel and if another attorney would need to take the same steps to represent the client, the court may find that disqualification should be denied. Id. at 1261.[3] However, "actual unethical behavior will not and should not be tolerated." Id. See also Graham v. Lennington, 74 B.R. 963, 966 (S.D.Ind.1987) (referring to § 327(c) and finding no actual conflict of interest to justify disqualification).

 ▮ Reviewing the testimony and evidence presented in this case, the court concludes that Barnes & Thornburg has no adverse interest to Nephi's estate within the meaning of 11 U.S.C. § 327. The court further finds that Barnes & Thornburg is a disinterested party within the meaning of §§ 327(a) and 1107(b). The court believes that Congress anticipated disputes such as this one in drafting §§ 327 and 1107 of the Bankruptcy Code. Congress certainly anticipated that a debtor in possession might choose to hire an attorney who advised it pre-petition or one who represented a creditor of the debtor. Reviewing the evidence

presented concerning Barnes & Thornburg's representation in this case, the court is not convinced that any other attorney would have or should have acted any differently in representing Nephi. Barnes & Thornburg followed the direction of Nephi's board of directors in filing the bankruptcy petition and formulating proposals for a plan of reorganization as it should have. The court recognizes that counsel for a corporation may be placed in an awkward position when the members of the board of directors disagree as to the management and operation of the corporation. The court believes, however, that counsel has the obligation to follow the directives of the majority of the duly elected representatives of the corporation in performing services for the corporation. Congress certainly recognized that corporations (with no actual independent existence outside the realm of their duly elected or appointed representatives) require the normal means of decision-making and operation in the bankruptcy setting. Hence, when a corporation is a debtor in possession, the corporation through its officers and directors must make decisions on behalf of the corporation and its shareholders including that of hiring counsel for representation in the proceedings and formulating a plan of reorganization.

In this case the court finds that Barnes & Thornburg has limited its representation in this proceeding to Nephi and has not unfairly or inappropriately favored the Joneses or their companies' interests in giving legal advice to Nephi. Barnes & Thornburg's proposal for reorganizing Nephi (with the three different options) evidences the fairness of Barnes & Thornburg's representation of Nephi in these matters. Importantly, Cyphers have failed to show that any purported conflict of Barnes & Thornburg has harmed them or any other creditor in any way. Mr. Cypher perhaps most vividly showed the lack of harm from Barnes & Thornburg's repre-

---

**3.** In General Electric the district court determined that the defendants would suffer great prejudice due to the fact that their attorney already had worked on their case for over a

year. 683 F.Supp. at 1261. The court further found that any other attorney would have had to take the same steps which the defendants' attorney had taken. Id.

 

sentation when he pointed to the filing of the petition itself as the "harm" which he and Nephi have suffered as a result of Barnes & Thornburg's representation. While Mr. Cypher may be dissatisfied by the filing of the petition, the court is unable to find that the filing itself has injured Nephi, the Cyphers, or any other creditor. The court is concerned about Mr. Cypher's allegation that the Joneses filed the petition in an effort to "trash" Nephi and to divert its business to their other companies. This allegation, however, is not supported by the evidence before the court at this time and perhaps should be directed at the Joneses by way of an adversary proceeding rather than at Nephi's counsel in this proceeding. Although Barnes & Thornburg has followed the directives of the Joneses (who constitute the majority of directors of Nephi) as counsel for Nephi, the court finds no evidence to show that Barnes & Thornburg carried on its representation or utilized the provisions of the Bankruptcy Code for an improper purpose or to further the Joneses' personal interests. In addition, Cyphers simply have been unable to show that Barnes & Thornburg has an actual conflict of interest in this case.

Another practical factor in this case is the timing of the filing of Cyphers' motion. Mr. Cypher and Mr. Iwanyshyn testified that they became concerned about Barnes & Thornburg's representation in the early stages of this case at the first meeting of creditors. Cyphers waited over a year after the meeting, though, to file their motion to disqualify. While the court is hesitant to find that the Cyphers waived their right to move for disqualification of counsel because the court believes it should independently evaluate whether Nephi's counsel has a conflict of interest in this case, the court does find that Nephi and its creditors would be greatly prejudiced if Barnes & Thornburg were removed from the case at this time. The uncontradicted testimony at the hearing on this matter was that Nephi should be prepared to move forward with its confirmable 100% plan of reorganization *within two weeks*. No doubt Barnes & Thornburg has played a crucial role in negotiating and obtaining approval of financ-

ing for Nephi. Nephi and its creditors certainly would suffer a critical, if not fatal, setback if Barnes & Thornburg were disqualified at this point.

Also important to the court's decision herein, is the fact that the Committee (representing those who most likely would be injured by any purported conflict of interest) and the United States Trustee (who originally requested that Barnes & Thornburg file a supplemental affidavit to clarify its relationship with the creditors and insiders of Nephi whom it has represented in other matters) oppose the motion to disqualify. While these parties originally may have had some questions about Barnes & Thornburg's representation of Nephi, their investigation and the progress of this case apparently have relieved their concerns. Both parties indicated that they do not believe disqualification is necessary or desirable in this case. Based upon the legal standards of §§ 327(a) and 1107(b) of the Bankruptcy Code as well as the standards for disqualification set forth by the courts, the court agrees with their conclusion.

### Conclusion

WHEREFORE, the court now denies Cyphers' motion to disqualify Barnes & Thornburg as Nephi's counsel in this case and sustains Nephi's objection thereto.

SO ADJUDGED.