Alfred B. FREEMAN, Plaintiff-Appellee,

v.

CHICAGO MUSICAL INSTRUMENT
CO., Defendant-Appellant.

No. 82–1372.

United States Court of Appeals,
Seventh Circuit.

Submitted July 30, 1982.*

Decided Sept. 27, 1982.

Rehearing and Rehearing In Banc
Denied Nov. 9, 1982.

---

* On March 16, 1982, this Court granted the appellant's motion that this appeal be expedited to decision. Accordingly, this appeal is submitted for decision without oral argument. *See* Fed.R.App.P. 34(a); Circuit Rule 14(f).

John F. Flannery, Fitch, Even, Tabin, Flannery & Welsh, Roger D. Greer, Chicago, Ill., for defendant-appellant.

John P. Milnamow, Talivaldis Cepuritis, Dressler, Goldsmith, Shore, Sutker & Milnamow Ltd., Arne M. Olson, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The Chicago Musical Instrument Company (CMI) appeals an order of the United States District Court for the Northern District of Illinois, Eastern Division, the Honorable Stanley J. Roszkowski presiding, disqualifying CMI's co-counsel, the law firm of Fitch, Even, Tabin, Flannery & Welsh (Fitch or the Fitch firm), in this patent infringement action. Two questions are presented for our review. We must first decide in light of the Supreme Court's recent pronouncement in *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), whether an order granting a disqualification motion continues to be a collateral order immediately appealable to this Court under 28 U.S.C. § 1291. Because we find that such an order remains appealable under the collateral order doctrine, we have jurisdiction to consider the second question of whether the district court properly concluded that the disqualification of the Fitch law firm was required in this case. For the reasons discussed below, we reverse the order of the district court and remand for proceedings consistent with this opinion.

I.

Alfred B. Freeman brought this action in July of 1973 against the Chicago Musical Instrument Company, alleging that CMI had infringed upon several patents owned by Freeman. The patents involve chord organs having an electronic system for sounding bass notes. CMI denied both infringement of the patents and actual ownership of them by Freeman.

On October 16, 1978, Freeman retained the law firm of Dressler, Goldsmith, Shore, Sutker & Milnamow, Ltd. (Dressler) to represent him in this action.[1] Prior to this, since 1975, the Dressler law firm had represented Freeman in other electronic organ matters but did not directly represent Freeman in this case. Throughout the entire course of this action, CMI has been represented by the Chicago law firm of Hill, Van Santen, Steadman, Chiara & Simpson, P.C. (Hill).

The ownership aspect of the lawsuit was tried before the district court in November of 1978 and was resolved in Freeman's favor. Shortly thereafter, CMI engaged the services of the Chicago law firm of attorneys of Fitch, Even, Tabin, Flannery & Welsh to act as co-counsel with the Hill law firm.[2] Appearances were entered in district court by John Flannery and Roger Greer on behalf of the Fitch law firm. Apparently when the new litigation was made known to the members of the Fitch firm,

---

1. Freeman was initially represented by W. Melville Van Sciver, who at the time he filed the initial complaint was a sole practitioner. On April 9, 1965, George Gerstman, of the firm of Lettvin, Pigott & Gerstman, filed an appearance in district court on behalf of Freeman. Van Sciver had previously voluntarily withdrawn as counsel. Gerstman and his firm were ultimately replaced by Dressler.

2. CMI's initial choice of co-counsel was Ronald E. Larson of the law firm of Allegretti, Newitt, Witcoff & McAndrews. Larson and the Allegretti law firm were disqualified by Judge Roszkowski when it was revealed that the firm shared office space with the original attorney for Freeman, W. Melville Van Sciver.

Eric C. Cohen, an associate in Fitch since May 1979, notified Flannery that he had previously been employed as an associate lawyer in the Dressler law firm from July 1976 until April 1979. Cohen told Flannery that he had neither worked on nor had he any knowledge of the subject matter of the present litigation. Flannery then notified opposing counsel at Dressler of these facts and was informed that Dressler objected to the further representation of CMI by the Fitch law firm. Dressler claimed that Cohen had access to the confidences and secrets of their client, Freeman, in that it was a Dressler firm policy to distribute various legal opinions and memoranda to all lawyers of the firm. The Dressler law firm also claimed that cases were often discussed by members of the firm among each other, implying that Cohen was privy to Freeman's secrets and confidences.

CMI then filed a motion with the district court requesting a declaration that the Fitch law firm be allowed to continue to represent CMI in this action. In support of their motion, an affidavit by Cohen was submitted. In it Cohen averred that while he was an associate at Dressler he never performed work on behalf of Freeman and that he, Cohen, had no knowledge of the subject matter of the present lawsuit. He also averred that although various legal memoranda and opinions circulated at Dressler, he typically had been too busy to read them.

The Dressler firm in response filed an affidavit executed by Talivaldis Cepuritis, a member of Dressler and counsel for Freeman, in which Cepuritis averred that the Freeman litigation files were stored in cabinets immediately outside of Cohen's former office and also that it was the practice of the firm to circulate and discuss among the members of the law firm correspondence, opinions, memoranda, etc. generated from the firm's cases. In a supplemental affidavit, Cohen responded that he had never met Mr. Freeman and that he recalled neither reading nor discussing any memoranda or files related to the Freeman case.

The district court, without making any findings of fact, concluded that "there can be little doubt that permitting the Fitch firm to represent defendant in the instant case would result in an appearance of impropriety." Relying upon *Westinghouse Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221 (7th Cir. 1978), the district court went on to state that "it is not appropriate for the court to inquire into whether actual confidences were disclosed." Concluding that Cohen was tainted by his prior association with the Dressler law firm, the district court imputed the taint to the Fitch law firm and accordingly disqualified it. It is from this order that CMI appeals.

## II.

Before addressing the merits of CMI's appeal, we must first determine whether, in light of *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), an order disqualifying counsel is appealable prior to the entry of a final judgment in the underlying action.

Pursuant to 28 U.S.C. § 1291, the Courts of Appeals have jurisdiction over "all final decisions of the district courts . . . except where a direct review may be had in the Supreme Court." This language has generally been construed to mean that an appeal may not be taken under this section until there has been "a decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Randle v. Victor Welding Supply Co.,* 664 F.2d 1064, 1065 (7th Cir. 1981), quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 476, 98 S.Ct. 2454, 2462, 57 L.Ed.2d 351 (1978). In *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), however, the Supreme Court recognized that certain "collateral orders" which do not terminate the action on the merits are nevertheless appealable "final decisions" under § 1291. To fall within the *Cohen* exception to the final judgment rule, three requirements must be met. First, the order must conclusively determine the disputed question. Second, it must resolve an

important issue completely separate from the merits of the action. Finally, the order must be effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay, supra,* 437 U.S. at 468, 98 S.Ct. at 2457. *See also Firestone Tire & Rubber Co. v. Risjord, supra,* 449 U.S. at 375, 101 S.Ct. at 674.

■ This Court has previously held that both orders granting and denying motions to disqualify counsel satisfy the *Cohen* criteria and thus are appealable. *Schloetter v. Railoc of Indiana, Inc.,* 546 F.2d 706, 709 (7th Cir. 1976). In *Schloetter,* we declined to distinguish the appealability of orders denying disqualification from those granting disqualification. *Id.* at 709 n.5. Now, however, in light of the Supreme Court's recent decision in *Firestone Tire & Rubber Co. v. Risjord, supra,* we must make this distinction. The Supreme Court held in *Firestone* that an order denying a motion to disqualify the opposing party's counsel in a civil case is not appealable under § 1291.[3] In so holding, the Supreme Court declined

to express any view on the question of appealability of orders granting disqualification motions. *Firestone Tire & Rubber Co. v. Risjord, supra,* 449 U.S. at 372 n.8, 101 S.Ct. at 672 n.8. It remains our view that such orders are appealable.[4]

The first prong of the "collateral order" test is clearly met by an order granting a disqualification motion. Such an order "conclusively determine[s] the disputed question" because the only issue to be determined is whether challenged counsel will be permitted to continue his representation. This position is consistent with *Firestone,* in which the Court, with two justices in disagreement as to this point, found that even orders denying disqualification motions conclusively determine the disputed question. *Id.* 449 U.S. at 375, 101 S.Ct. at 674. Moreover, an order granting a motion to disqualify counsel is not, as is, according to the two concurring justices in *Firestone,* the case with an order denying a disqualification motion, "subject to reconsideration from

3. In *Firestone,* the Court concluded that an order denying disqualification of counsel failed to meet the third of the *Cohen* conditions. It held that effective review of the district court's refusal to disqualify counsel could be had on appeal from the judgment, since at that time, if the Court of Appeals concluded that the district court's ruling constituted prejudicial error, it could vacate the judgment appealed from and order a new trial. The Court noted that the harm in being forced to await final judgment before appealing did not " 'diffe[r] in any significant way from the harm resulting from other interlocutory orders that may be erroneous such as orders requiring discovery over a work-product objection or orders denying motions for recusal of the trial judge.' " *Firestone Tire & Rubber Co. v. Risjord, supra,* 449 U.S. at 378, 101 S.Ct. at 676, quoting *Armstrong v. McAlpin,* 625 F.2d 433, 438 (2d Cir. 1980), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981).

4. This view is consistent with the other circuits and the Court of Customs and Patent Appeals that have considered the issue since *Firestone. See, e.g., Greitzer & Locks v. Johns-Manville Corp.,* No. 81–1379 (4th Cir. Mar. 5, 1982); *Ah Ju Steel Co., Ltd. v. Armco, Inc.,* 680 F.2d 751, 753 (C.C.P.A. 1982); *United States v. Hobson,* 672 F.2d 825, 826 (11th Cir. 1982); *United States v. Caggiano,* 660 F.2d 184, 189 (6th Cir. 1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1444, 71 L.Ed.2d 658 (1982); *In re Coordinated*

*Pretrial Proceedings, Etc.,* 658 F.2d 1355, 1356–57 (9th Cir. 1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982); *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 748 n.2 (2d Cir. 1981); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1024–27 (5th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). Circuits that considered the question prior to *Firestone* also agreed that an order disqualifying counsel was an appealable collateral order. *See, e.g., Armstrong v. McAlpin,* 625 F.2d 433, 440–41 (2d Cir. 1980), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *In re Multi-Piece Rim Products Liability Litigation,* 612 F.2d 377, 378 (8th Cir. 1980), *vacated sub nom. Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981); *General Electric Co. v. Valeron Corp.,* 608 F.2d 265, 266–67 (6th Cir. 1979), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Brennan's Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 171 (5th Cir. 1979); *Schloetter v. Railoc of Indiana, Inc.,* 546 F.2d 706, 709 (7th Cir. 1976); *In re Investigation Before April 1975 Grand Jury,* 531 F.2d 600, 605 n. 8 (D.C. Cir. 1976); *Richardson v. Hamilton Int'l Corp.,* 469 F.2d 1382, 1383 n.1 (3d Cir. 1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *United States v. Hankish,* 462 F.2d 316, 318 (4th Cir. 1972) (dictum).

time to time," because once a person's chosen attorney has been barred from representing that client, the client must then change his position in retaining another attorney or choosing to forego representation. *Cf. Firestone Tire & Rubber Co. v. Risjord, supra,* 449 U.S. at 380, 101 S.Ct. at 677 (Rehnquist, J., concurring in result only) (denial of disqualification motion does not conclusively determine disputed question where court may reconsider issue as trial progresses). The effect here is immediate and conclusive. *See In re Coordinated Pretrial Proceedings, Etc.,* 658 F.2d 1355, 1357 (9th Cir. 1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982). For all practical purposes, once a court disqualifies an attorney, it is not likely that a court will even have an opportunity to change its ruling. Substitute counsel will, no doubt, be quickly secured.

The grant of a motion to disqualify counsel also serves to "resolve an important issue completely separate from the merits of the action." The court's order in this case involves legal and factual issues distinct and separate from the underlying patent issues presented.[5] Clearly, the order disqualifying counsel does nothing to assist in the resolution of the plaintiff's claims presented by his complaint. The second prong of the *Cohen* test is accordingly met by the court's order.[6]

It is with the third and final *Cohen* requirement that we must distinguish an order granting a disqualification motion from an order denying it. The Supreme Court in *Firestone* concluded that orders denying disqualification motions remain effectively reviewable on appeal from a final judgment. We reach the opposite conclusion concerning orders granting disqualification motions. Unlike orders denying disqualification motions, orders granting disqualification requests have immediate, severe, and often irreparable and unreviewable consequences upon both the individual who hired the disqualified attorney or law firm as well as upon the disqualified counsel. It is our holding that an order granting a disqualification motion is effectively unreviewable on appeal from a final judgment.

First, with respect to orders granting disqualification motions, the losing party with the tainted counsel is immediately separated from the representation of his choice. The effect of this is immediate and measurable. The party who has had his counsel disqualified is abruptly deprived of his legal advisor, and, provided the affected party desires to proceed with his action, the litigation is disrupted while he secures new counsel. This resulting situation is contrary to that which occurs with a denial of a disqualification motion—with a motion denial there typically is no disruption in the litigation. If the order granting disqualification is erroneous, correcting it with an appeal at the end of the case might well require a party to show that he lost the case because he was improperly forced to change counsel. This would appear to be, as the Second Circuit recently observed, "an almost insurmountable burden," *Armstrong v. McAlpin,* 625 F.2d 433, 441 (2d Cir. 1980), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981), or an exercise in futility. *See also In re Coordinated Pretrial Proceedings, Etc., supra,* 658 F.2d at 1358; *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1027 (5th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). Moreover, it may also

---

**5.** Freeman alleged in his complaint that he was the owner of two patents, Nos. 3,548,066 and 3,711,618, which had been infringed by CMI. The patents involve a system invented by Freeman for sounding bass notes in electronic musical instruments. CMI responded that Freeman, as a former employee of CMI, did not rightfully own the patents but instead was obligated to assign to CMI the rights to all of his inventions. Furthermore, CMI claimed that even if Freeman did properly own the patents, CMI was entitled to a nonexclusive license to use Freeman's inventions in its business. The district court decided the ownership question in Freeman's favor. The infringement issue has yet to be litigated.

**6.** In *Firestone,* the Supreme Court assumed, without deciding, that an order denying a disqualification motion fulfills the second prong of the *Cohen* test. *Firestone Tire & Rubber Co., supra,* 449 U.S. at 376, 101 S.Ct. at 674.

be difficult, if not impossible, for a new attorney to master "the nuances of the legal and factual matters" late in the litigation of a complex case. Comment, *The Availability of the Work Product of a Disqualified Attorney: What Standard?*, 127 U.Pa.L.Rev. 1607, 1608 n.12 (1979). *See, e.g., Central Milk Producers Co-op. v. Sentry Food Stores*, 573 F.2d 988, 992 (8th Cir. 1978); *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978). Indeed, evidence may be impossible to reconstruct because witnesses are unavailable and real evidence has been lost or destroyed. Comment, *id.* at 1634. *See also Canadian Gulf Lines v. Triton Int'l Carriers*, 434 F.Supp. 691, 696 (D. Conn. 1976). Proof of the often subtle ramifications of an order disqualifying counsel may be impossible at times to adequately present.

Second, a granting of a disqualification motion all too often impairs the reputation of the disqualified firm or attorney, and this injury may never be corrected on appeal if the party is satisfied with the performance of his new counsel. *Armstrong v. McAlpin, supra,* 625 F.2d at 441. Nor is the disqualified counsel, if his former client prevails in the action, likely to find any remedy for the wrongful loss of fees that would otherwise be rightfully his. *See Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 646 F.2d at 1027.

Neither do litigants facing a disqualification order have available to them the protection cited by the *Firestone* Court as a rationale for denying review of most pretrial discovery orders: "[I]n the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." *Firestone Tire & Rubber Co. v. Risjord, supra,* 449 U.S. at 377, 101 S.Ct. at 675. An attorney choosing to defy a disqualification order faces not only contempt sanctions but direct disciplinary action for an ethical violation, either from the organized bar or, more often, a state supreme court. As the Ninth Circuit has noted:

This differs markedly from the case where an attorney in good faith takes the position that his *client* should not be required to comply with a discovery order; at least in that instance, the lawyer is not requested to engage in what amounts to an act of civil disobedience with personal consequences in order to obtain review.

*In re Coordinated Pretrial Proceedings, Etc., supra,* 658 F.2d at 1357. Immediate appealability of an order disqualifying counsel will prevent attorneys from committing potentially unethical acts in efforts to seek collateral review and will also aid the bar and the general public by supporting the judicial system's interest in maintaining a public image of impartiality, fairness, and propriety.

Finally, we note that one rationale for denying collateral appeal of orders denying disqualification motions is that were collateral review allowed, parties could routinely seek collateral review for tactical reasons such as delay and harassment. The granting of a disqualification motion by a district court is a fair indication that a legitimate and nonfrivolous issue has been raised. It appears far less likely that appeals from orders granting disqualification motions will be taken for purely tactical reasons. If a motion is determined to be frivolous, the aggrieved party may be awarded costs under frivolous action laws that exist in many jurisdictions. It is incumbent upon courts, when a legitimate question of propriety arises, to dispose of matters promptly in order to facilitate and improve the justice system. Immediate appealability of orders granting disqualification motions fulfills this purpose.

For the above reasons, we feel that an order granting a motion to disqualify counsel falls into the "small class [of cases] . . . too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen, supra,* 337 U.S. at 546, 69 S.Ct. at 1225. Such an order, therefore, remains within the narrow exception to the final judgment

rule. Finding that we have jurisdiction to hear this appeal, we now proceed to a consideration of the merits of CMI's substantive claim.

## III.

Preliminarily, it is important to note the limits of the scope of review by which we are guided. All evidence in the case at bar comes via affidavits. The district court neither held an evidentiary hearing on the disqualification motion nor did it make findings of fact to which we must defer. Under similar circumstances, we have stated and we now reaffirm that district courts enjoy no particular advantage over appellate courts in their formulation of ethical norms. *Novo Terapeutisk, Etc. v. Baxter Travenol Lab.,* 607 F.2d 186, 189 (7th Cir.), *vacated on other grounds,* 607 F.2d 186, 194 (1979) (en banc). *See also Thompson v. United States,* 477 F.2d 164, 167 (7th Cir. 1973). It is thus appropriate for us, in this case, to determine whether the district court's disqualification order was predicated upon a proper understanding of applicable ethical principles. *Novo, supra,* 607 F.2d at 188, quoting *Aetna Casualty and Surety Company v. United States,* 570 F.2d 1197, 1200 (4th Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978).

## IV.

The question of propriety that has arisen in this case concerns a law firm attempting to represent a party where an associate of the law firm was at one time an associate member for the law firm representing the adverse party. The resolution of the ethical question presented in this case must be guided by prior caselaw and the precepts of the Code of Professional Responsibility itself. Before we begin our analysis, however, it is necessary to briefly note the ethical considerations which are implicated by the issue presented here. A fundamental principle in the lawyer-client relationship is that a lawyer shall maintain the confidentiality of the information relating to the representation. This principle is expressly recognized by Canon 4[7] of the ABA Code of Professional Responsibility and is also encompassed within the parameters of Canon 9.[8] It is part of a court's duty to safeguard the sacrosanct privacy of the attorney-client relationship. *See American Can Company v. Citrus Feed Co.,* 436 F.2d 1125, 1128 (5th Cir. 1971). In doing so, a court helps to maintain public confidence in the legal profession and assists in protecting the integrity of the judicial proceeding. *United States v. Agosto,* 675 F.2d 965, 969 (8th Cir. 1982). Disqualification of counsel is but one of several avenues available to a court in its attempt to insure that Canons 4 and 9 are not violated.[9] On the other hand, we also note that disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing. *See Comden v. Superior Court,*

---

**7.** Canon 4 states: "A Lawyer Should Preserve the Confidences and Secrets of a Client."

**8.** Canon 9 states: "A Lawyer Should Avoid Even the Appearance of Professional Impropriety."

**9.** The Eighth Circuit has proffered one justification for the merger of Canon 9's concern for the appearance of impropriety with Canon 4's injunction against disclosure of secrets:

Clients who retain, are billed by, and pay a law firm, can reasonably expect, and often their problems require, that confidences disclosed to one lawyer in the firm will be shared with others in the firm. Indeed, the ability to bring various fields of expertise to bear on the client's problem often serves as a justification for practice as a firm and the very reason for the client's decision to retain the firm. If the reputation and status of the legal profession, and more importantly the freedom and opportunity of the public to obtain adequate legal counseling, are to be preserved, a client must have every reason to expect that disclosures to "his" law firm will not be used against him by any member or associate lawyer in that firm.

*State of Arkansas v. Dean Foods Products Company, Inc.,* 605 F.2d 380, 385–86 (8th Cir. 1979).

20 Cal.3d 906, 145 Cal.Rptr. 9, 16, 576 P.2d 971, 978, *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 652 (1978). We do not mean to infer that motions to disqualify counsel may not be legitimate, for there obviously are situations where they are both legitimate and necessary; nonetheless, such motions should be viewed with extreme caution for they can be misused as techniques of harassment.

The analysis which we will employ to resolve the issue presented has been developed through the prior caselaw of the Seventh Circuit. *See Novo Terapeutisk Laboratorium, Etc. v. Baxter Travenol Lab.,* 607 F.2d 186 (1979) (en banc); *Westinghouse Electric Corp. v. Gulf Oil Corp., supra; Westinghouse Electric Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311 (7th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978); *Schloetter v. Railoc of Indiana, Inc., supra;* and *Cannon v. U. S. Acoustics Corp.,* 398 F.Supp. 209 (N.D. Ill. 1975), *adopted and affirmed,* 532 F.2d 1118 (1976). We must accordingly first ascertain whether the representation of Freeman by the Dressler firm, at the time Cohen was an associate there, is substantially related to the present litigation. If we conclude that it is, we must then determine whether the presumption that Cohen shared in the confidences and secrets of Freeman while he was an associate for the Dressler firm has been rebutted. Only if we find that it has not been rebutted may we reach the dispositive issue of whether the Fitch firm was properly disqualified.

The first step in our analysis requires that we ascertain whether the subject matter of the representation of Freeman by the Dressler firm, at the time Cohen was an associate there, is "substantially related" to the present litigation.[10] If the subject matter of the former representation is not substantially related to the subject matter of the present representation, obviously no ethical problem exists. *See Uniweld Products, Inc. v. Union Carbide Corp.,* 385 F.2d 992, 994–95 (5th Cir. 1967), *cert. denied,* 390 U.S. 921, 88 S.Ct. 853, 19 L.Ed.2d 980 (1968). Our determination need not detain us here long. There is no dispute that the matters involved are substantially related. They involve, in fact, the same case. The suit and the parties have remained the same throughout the proceedings. The only factor to have changed has been Cohen, who, by moving from Freeman's firm to CMI's law firm, exposed the Fitch firm to the disqualification challenge. It is without doubt that the matters are substantially related.

■ Implicit in a finding of substantial relationship is a presumption that particular individuals in a law firm freely share their client's confidences with one another. *See Novo Terapeutisk, Etc. v. Baxter Travenol Lab., supra,* 607 F.2d at 196; *Westinghouse Electric Corp. v. Kerr-McGee Corp., supra,* 580 F.2d at 1321; *Schloetter v. Railoc of Indiana, Inc., supra,* 546 F.2d at 710. It was upon this presumption that the district court relied when it disqualified the Fitch firm. Our decision in *Novo,* however, indicates that further analysis was and is necessary.

■ In *Novo,* we recognized that the presumption that an attorney has knowledge of the confidences and secrets of his firm's clients is rebuttable. *Novo Terapeutisk, Etc. v. Baxter Travenol Lab., supra,* 607

---

10. The "substantial relationship" test was first espoused in the seminal case *T. C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265 (S.D.N.Y. 1953). Essentially, the test has been held to require three levels of inquiry:

Initially, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether the information is relevant to the issues raised in the litigation pending against the former client.

*Westinghouse Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 225 (7th Cir. 1978). In *Westinghouse,* we also noted that the determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought. *Id.* at 224.

F.2d at 197. CMI argues that Cohen's affidavits, which state that he neither read the memoranda which circulated within the firm nor had he any knowledge of the Freeman case, satisfactorily rebuts the above described presumption. The district court failed to make any determination as to this issue.

The question as to what quality or quantity of proof is actually necessary to rebut the presumption of imputed knowledge was expressly left open in *Novo. Id.* The purposes behind the disqualification remedy, namely, the need to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information, *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 271 (2d Cir. 1975), as well as to continue to achieve a high regard for the legal profession in the public mind, *General Motors Corp. v. City of New York,* 501 F.2d 639, 649 (2d Cir. 1974), seem to indicate that a rather strict standard of proof is required. The Second Circuit, however, has cautioned that:

> It will not do to make the presumption of confidential information rebuttable and then to make the standard of proof for rebuttal unattainably high. This is particularly true where, as here, the attorney must prove a negative, which is always a difficult burden to meet.

*Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures,* 224 F.2d 824, 827 (2d Cir. 1955), *cert. denied,* 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956).[11]

In *Novo,* this Court held that the uncontroverted affidavits "clearly and effectively" rebutted the presumption existing in the case. *Novo Terapeutisk, Etc. v. Baxter Travenol Lab., supra,* 607 F.2d at 197. A requirement for such a finding in order to rebut the presumption is not an unreasonable one. It creates no conflict with the purposes behind the disqualification order nor is it by any means impossible to meet or "unattainably high." Accordingly, if an attorney can clearly and effectively show that he had no knowledge of the confidences and secrets of the client, disqualification is unnecessary and a court order of such might reasonably be regarded as an abuse of discretion. A district court, in resolving this issue, may of course rely on any of a number of factors, among them being the size of the law firm, the area of specialization of the attorney, the attorney's position in the firm, and the demeanor and credibility of witnesses at the evidentiary hearing.

In this case, the district court failed to address the question of whether CMI had clearly and effectively shown that Cohen, while he was an associate for the Dressler law firm, had no knowledge of the confidences and secrets of the client Freeman. The possible appearance of impropriety, found to be determinative by the district court, is simply too weak and too slender a reed on which to rest a disqualification order in this case, particularly where the mere appearance of impropriety is far from clear. *Accord, Armstrong v. McAlpin, supra,* 625 F.2d at 445. If CMI is able to show that Cohen was not privy to the above information, there obviously is no need for the disqualification of the Fitch law firm. An evidentiary hearing is thus necessary to make these factual determinations. In so holding, in view of the limited record and scarcity of facts recited, we express no opinion as to how this issue should be resolved. What Cohen knew is a question of fact for the district court to decide in the first instance.[12]

---

**11.** In support of its holding, the *Laskey* court expressed concern that an irrebuttable presumption "might seriously jeopardize [young lawyers'] careers by temporary affiliation with large law firms." *Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures,* 224 F.2d 824, 827 (2d Cir. 1955), *cert. denied,* 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956). The court also projected an adverse effect on clients, noting that strictly applied disqualification rules might result in "difficulty in discovering technically trained attorneys in specialized areas who were not disqualified, due to their peripheral or temporally remote connections with attorneys for the other side." *Id.*

**12.** It will be necessary for the Fitch law firm to be disqualified should CMI be unable to show that Cohen was not privy to Freeman's confidences and secrets. *See Novo Terapeutisk Laboratorium, Etc. v. Baxter Travenol Lab.,* 607 F.2d 186 (7th Cir. 1979).

## V.

Accordingly, the order of the district court is REVERSED and REMANDED for proceedings consistent with this opinion.