**JONES & HENRY, ENGINEERS, LTD., Plaintiff and Counter–Claim Defendant,**

v.

**TOWN OF ORLAND, INDIANA, Defendant and Counter–Claimant.**

No. 1:96CV151.

United States District Court, N.D. Indiana, Fort Wayne Division.

Aug. 27, 1996.

Travis S. Friend, Frank J. Gray, Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Gary P. Price, Brian A. Statz, and Bette J. Dodd, Lewis and Kappes, Indianapolis, IN, for Jones & Henry, Engineers, Ltd.

D. Randall Brown, Barnes and Thornburg, Fort Wayne, IN, and Neal Lewis, Neal Lewis and Associates, Orland, IN, for Town of Orland, Indiana.

## *MEMORANDUM OF DECISION AND ORDER*

COSBEY, United States Magistrate Judge.

On July 10, 1996, the Defendant/Counter-claimant, the Town of Orland, Indiana ("the Town"), moved to disqualify Bette J. Dodd ("Dodd") and Lewis & Kappes, P.C., as counsel for Plaintiff/Counter-claim Defendant, Jones & Henry Engineers, Ltd. ("J & H"). On July 29, 1996, J & H filed its opposition, and the Town replied on August 9, 1996. Moreover, the Court entertained oral argument on this matter on August 21, 1996.

In addition to the materials submitted with the supporting briefs, the Court has considered the affidavit of George McNaughton ("McNaughton") (the Town attorney through "January 31, 1995"),[1] submitted by J & H during oral argument; Dodd's handwritten notes from the prior representation filed under seal by J & H on August 14, 1996, a supporting affidavit submitted by Dodd on August 26, 1996; and, unredacted versions of the redacted letters attached to the Town's reply brief, filed by counsel for the Town under seal at the close of oral argument. For the reasons stated hereinafter, the motion will be DENIED.

---

1. The second paragraph of McNaughton's affidavit contains a typographical error as to the year he ceased being the Town attorney. From the chronology of events, it is clear that he meant to state that he was the Town attorney through January 31, 1996.

## I. FACTUAL AND PROCEDURAL HISTORY

On April 23, 1996, J & H, which is represented by Lewis & Kappes, filed a complaint for declaratory relief against the Town. One of the attorneys at Lewis & Kappes, Dodd, used to work for the law firm of Ice, Miller, Donadio & Ryan ("Ice, Miller"), which has represented the Town in the past. Based on this prior representation, the Town seeks the disqualification of both Dodd and Lewis & Kappes.

In its complaint, J & H alleged that it had entered into a contract with the Town to provide engineering services for the design of a wastewater collection and treatment facility and a water distribution system (hereinafter collectively referred to as "the project"). *See* Compl. ¶¶ 6, 8 Exhs. A, C. J & H allegedly had obtained approval for the preliminary engineering design for the project from the Town and the Farmers Home Administration. *Id.* ¶ 9. In February 1995, however, some Town residents sued to enjoin construction of the facility, asserting trespass and nuisance as a result of discharge into the Fawn River.[2] *Id.* ¶ 10; Dodd Aff. ¶ 17(c). On April 6, 1995, the trial court issued a preliminary injunction, which was later vacated by the Indiana Supreme Court on October 20, 1995. Compl. ¶¶ 11–12; *see* Mot. Exh. 1. In January 1996, a new town council was installed, which, since then, has suspended all work on the project. *Id.* ¶ 14. Asserting its willingness and ability to continue to perform under the contracts, J & H sought declaratory relief to determine its rights and obligations under the two alleged contracts. *Id.* ¶¶ 19, 22.

In response, the Town challenged the validity of the contracts. *See* Affirmative Defenses ¶¶ 1–4. It also counterclaimed for breach of contract, professional negligence/negligent misrepresentation, and fraud for failing to design a wastewater treatment system that would obtain regulatory approval. First Am Counterclaim ¶¶ 27(f), 39(f), 32.

Lewis & Kappes urges that Dodd's prior representation of the Town was limited to assistance in defending the Town in the injunction suit along with McNaughton and Frank Stewart ("Stewart"), an attorney hired to represent the Town at the trial level. Specifically, the Town had based its defense on lack of subject matter jurisdiction, the fact that the matter was a "public lawsuit," *see* Ind.Code § 34–4–17–1(b), and failure to exhaust administrative remedies (*i.e.,* that primary jurisdiction lay with the Indiana Department of Environmental Management ("IDEM")).[3] After the trial court granted a temporary injunction, Dodd assisted in directly appealing the ruling to the Indiana Supreme Court, where it was vacated. *See* Dodd Aff. ¶ 16; Mot. Exh. 1.

Dodd flatly denies that she engaged in attorney-client communications or received or utilized confidential information, *Id.* ¶¶ 5–6, 8, 11–12, 14.[4] She further testified, in pertinent part:

a. I did not represent Orland on any regulatory permit proceedings. Although I attended one conference before the Department of Natural Resources ("DNR"), that is the only involvement I had in that proceeding. As noted in the prehearing conference order itself, Orland was enjoined from participating in the proceedings and elected to merely monitor the proceedings until the injunction was lifted by the Supreme Court.

b. The references to phone calls and contacts with [IDEM] and DNR on the

---

**2.** The Plaintiffs in that action were represented by Neal Lewis, who represents the Town in the present cause. Dodd Aff. ¶ 2, Exh. D.

**3.** Dodd's affidavit sets forth the specific legal services she performed in representing the Town. Dodd Aff. ¶¶ 3–12.

**4.** Citing *Toro Co. v. Krouse, Kern & Co., Inc.,* 644 F.Supp. 986, 989 (N.D.Ind.1986), (Lee, J.), *aff'd,* 827 F.2d 155 (7th Cir.1987), the Town challenges Dodd's catch-all disclaimer, *see* Dodd Aff. ¶ 13, as based only on her "knowledge and belief." Even disregarding the catch-all, however, Dodd's affidavit adequately establishes that she received no confidential information. She testified that she: never discussed the Town's ability to pay for the project in her conversations with the Town's financial advisor, Dodd Aff. ¶ 4; and, received no confidential information from McNaughton, Stewart, or Marlene Walters (the Town's Clerk–Treasurer and the only Orland official with whom Dodd had direct contact), *id.* ¶¶ 5, 6, 8, 11, 12, 17(d); *see id.* ¶¶ 7, 8, 9, 10, 14–16, 17(h), (i).

billing records discussed in Orland's brief relate to the procedural problems with the trial court's preliminary injunction entry and the state agencies' original action regarding that entry.... At no time did any of the discussions involve permitting procedure or the feasibility of the wastewater project designed by J & H. I was not retained to, and indeed did not, represent Orland in those matters.

c. At no time was I involved in examining the feasibility of the project designed by J & H, or representing Orland relating to that matter. The lawsuit filed by the citizens of Orland alleged trespass and nuisance as a result of potential discharge into the Fawn River. As such, the *feasibility* of the design was not at issue. *Rather the issue was whether the action was a "public lawsuit" and whether the plaintiffs had a cause of action. My work with Mr. McNaughton on behalf of Orland went to the jurisdictional and procedural issues relating to the Plaintiffs' complaint.*

d. The only direct communication that I had with any Orland official was Marlene Walters, the former Clerk–Treasurer. Those conversations involved matters of public knowledge....

e. The other references on the time entries relating to IDEM's involvement in the proceeding refer to the determination of whether any representatives from IDEM would be available for the hearing on the permanent injunction. I did not have any direct contact with IDEM representatives relating to that issue. None of the conversations that I had with IDEM or DNR went to the feasibility of the design or the permitting of the project. They all involved the jurisdiction of the court, and the agencies' willingness to get involved in that action.

f. Neither the feasibility of the J & H design nor the [project] Contracts with J & H were at issue in the prior lawsuit, nor was J & H's ability to perform under the contracts. Although the contracts between J & H and Orland were public record, I never saw [them] until I was retained by J & H in March of 1996 in the present matter.

g. I never represented Orland before IDEM on matters related to sewage outfall, design feasibility or any regulatory approvals.

h. My conversations with [the Town's financial advisor] involved the facts that Orland had state and federal grant and loan money. We discussed what could happen to those monies if the project was enjoined. We also discussed what financing alternatives Orland had if the project was enjoined erroneously and Orland lost the state and grant money. The purpose of that discussion was to determine the potential damages to Orland as a result of the Plaintiffs' actions. The ability to pay J & H on the contracts was never an issue in the underlying lawsuit, nor was the financial ability of Orland to pay its consultants, whether they were J & H, attorneys or financial advisors, ever discussed. Rather, the conversations involved the fact that alternative funding would be possible, but it would cost Orland more because of increased interest rates.

i. Orland's financial ability to finance the project was all public record. My work involving the potential damages to Orland did not involve any analysis of the wastewater project. In fact, my representation went to the public lawsuit nature of the proceeding, the court's jurisdiction, and the potential damages if the project was enjoined. At no time was I involved in reviewing or analyzing the design itself.

*Id.* ¶ 17 (second emphasis added).

Brian W. Houghton ("Houghton"), J & H's Fort Wayne Office Director, testified that he "was involved in the various permitting procedures before state agencies regarding the wastewater and water projects. [He] worked with [McNaughton] in these proceedings, but never worked with [Dodd] on such matters." Houghton Aff. ¶ 10.

McNaughton, who represented the Town when it contracted with J & H to provide engineering services for the project's design, declared that the Town retained Ice, Miller to assist in acquiring a municipal bond to finance the project. McNaughton Aff. ¶¶ 2–3. Noting that Ice, Miller was not involved in obtaining regulatory approval for the pro-

ject, he described Dodd's role as providing advice on "how Orland could proceed procedurally to make sure the project was not delayed by multiple lawsuits or delayed lawsuits, to limit the issues in the event lawsuits were filed, and to set some time frame in which the [plaintiffs] must act so that lawsuits would not later render the project nonbondable." *Id.* ¶¶ 4–5. McNaughton also consulted with Dodd about dismissing the complaint for an injunction on the grounds of "lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, and the fact that the matter was a 'public lawsuit.'" *Id.* ¶ 7.

The Court's *in camera* inspection of both Dodd's handwritten notes and the unredacted letters [5] reveals that this evidence comports with McNaughton's and Dodd's versions of the scope of her prior representation.

In support of the motion, the Town argues that the existence of a substantial relationship between Dodd's prior representation of the Town and present representation of J & H gives rise to an irrebuttable presumption of shared confidences between the Town and Dodd (although the Town offers no evidence of *actual* confidential information received and/or used by Dodd).

In response, J & H denies that a substantial relationship exists between the prior and present representation, alleging that the scope of the prior representation does not overlap with the present representation, and that any information she received is irrelevant to the present suit. J & H further maintains that Dodd, in fact, received no confidential information in her prior representation, relying only on matters that were open to the public.

In reply, the Town reiterates its position that a substantial relationship exists between the prior and present representation and contends that public policy favors disqualification.

## II. STANDARD OF REVIEW

Under N.D.Ind.L.R. 83.5, "[t]he Rules of Professional Conduct, as adopted by the Indiana Supreme Court, and the Standards for Professional Conduct, as adopted by the Seventh Circuit, shall provide standards of conduct for those practicing in this court." In turn, Indiana Rule of Professional Conduct 1.9 (governing conflicts of interest) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation...." In addition, a firm "may not represent a person in the same or a substantially related matter if [the firm] knows ... that [one of its attorneys has] previously represented a client whose interests are materially adverse to that person." *Id.* 1.9(b).

■ To determine whether an attorney has a conflict of interest with her client, the Court first asks whether a substantial relationship exists between the subject matter of the prior and present representations. *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 255–56 (7th Cir.1983). This inquiry involves three steps:

> First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

*Id.* (citations omitted). The Seventh Circuit has noted that "the determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is

---

**5.** The letters include two memorandums prepared by Dodd, and correspondence between Dodd and McNaughton; McNaughton and Stewart; Dodd and Stewart; and McNaughton and the town council.

sought."[6] *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 n. 10 (7th Cir.1982) (citation omitted); *see Donohoe v. Consolidated Operating & Prod. Corp.*, 691 F.Supp. 109, 114–15 (N.D.Ill.1988) (citing examples of "substantial relationships"). If there is no substantial relationship, then no ethical problem exists. *Freeman,* 689 F.2d at 722.

■ If the Court finds a substantial relationship, then a rebuttable presumption arises that the attorney received confidential information during the prior representation. *LaSalle Nat'l Bank,* 703 F.2d at 256. The Court then engages in two more analytical steps, as follows:

> The second step ... requires us to ... determine whether the attorney whose change in employment created the disqualification issue *was actually privy to any confidential information* his prior law firm received from the party now seeking disqualification of his present firm. *The evidence presented to rebut this presumption must "clearly and effectively" demonstrate that the attorney in question had no knowledge of the information, confidences and/or secrets related by the client in the prior representation....*

> Lastly, ... the court must determine whether the knowledge of the [client's] "confidences and secrets" ... which [the challenged attorney] brought with him has been passed on to or is likely to be passed on to the members of the [new] firm.[7]

*Schiessle v. Stephens,* 717 F.2d 417, 420–21 (7th Cir.1983) (citing *Freeman,* 689 F.2d at 723) (emphasis added), *followed, U.S. v. Goot,* 894 F.2d 231, 234–35 (7th Cir.1990), *cert. denied,* 498 U.S. 811, 111 S.Ct. 45, 112 L.Ed.2d 22 (1990); *Nelson v. Green Builders, Inc.,* 823 F.Supp. 1439, 1447 (E.D.Wis. 1993).[8]

## III. DISCUSSION

■ The Town asks this Court to disqualify Dodd and Lewis & Kappes because Dodd's previous firm once represented the Town in litigation related to the project, asserting that her involvement in the prior representation mandates the inference that she was privy to client confidences and secrets. While this argument has a certain amount of surface appeal, closer scrutiny reveals that the limited scope of Dodd's prior representation involved issues not present in the current litigation and that, at any rate, it is neither reasonable to infer that Dodd received, nor did she actually receive, actual confidential communications from the Town (which, it must be remembered, is a public entity).

There are two important considerations underlying motions to disqualify attorneys: "the sacrosanct privacy of the attorney-client relationship (and the professional integrity implicated by that relationship) and the prerogative of a party to proceed with counsel of its choice." *Schiessle,* 717 F.2d at 420 (citing *Freeman,* 689 F.2d at 721). At the same

---

**6.** The existence of a confidential relationship is established by showing that the client sought legal advice from the lawyer at the time the client made the disclosures. *Donohoe v. Consolidated Operating & Prod. Corp.,* 691 F.Supp. 109, 113 (N.D.Ill.1988) (citing *Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1318–20 (7th Cir.1978), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978)).

**7.** Thus, a tainted attorney need not necessarily "infect" an entire firm if effective screening measures (*i.e.,* a "Chinese wall") have been utilized. *See LaSalle Nat'l Bank,* 703 F.2d at 258–59; *Cromley v. Board of Educ. of Lockport Township High Sch. Dist. 205,* 17 F.3d 1059, 1065 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 74, 130 L.Ed.2d 28 (1994). However, Lewis & Kappes concedes that no such screening mechanisms were instituted here, based on its belief that no conflict of interest existed.

**8.** The Town takes the view that the presumption of shared confidences that arises from the existence of a substantial relationship is irrebuttable, citing *Novo Terapeutisk Lab. v. Baxter Travenol Lab.,* 607 F.2d 186, 197 (7th Cir.1979) (*en banc* ).

*Novo,* however, does not provide such a bright-line rule. Indeed, the Seventh Circuit itself has cited the case for the opposite proposition. *See Freeman,* 689 F.2d at 722–23. Moreover, the Seventh Circuit's most recent pronouncement of the standard in *Cromley,* 17 F.3d at 1064–65, was the *Schiessle* formulation discussed in the text. *See also U.S. v. Goot,* 894 F.2d 231, 234–35 (7th Cir.1990), *cert. denied,* 498 U.S. 811, 111 S.Ct. 45, 112 L.Ed.2d 22 (1990). To the extent that there is any confusion, the Court has chosen to apply *Cromley* "as the latest—and hence definitive—word on the subject." *Donohoe,* 691 F.Supp. at 116.

time, "disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman*, 689 F.2d at 721. Keeping these considerations in mind, the Court turns to applying the legal standard to the facts of this case.

### A. Substantial Relationship

In support of its motion, the Town argues that there is enough of a nexus between the prior and present representation to amount to a substantial relationship. J & H refutes the existence of such a relationship, contending that Dodd's arguments before the Indiana state courts dealt with pure questions of law based on facts in the public record.

In assessing whether a substantial relationship existed, the Court is to first reconstruct the scope of the prior representation. *LaSalle Nat'l Bank*, 703 F.2d at 255–56. The record reveals that Dodd's involvement in the prior case was limited to defense of the Town in regard to the suit for injunction. *See* Dodd Aff. ¶ 17(c) ("[T]he issue was whether the action was a "public lawsuit" and whether the plaintiffs had a cause of action. My work ... went to the jurisdictional and procedural issues relating to the Plaintiffs' complaint"); Houghton Aff. ¶ 10; McNaughton Aff. ¶¶ 3, 5, 7. The Court's *in camera* inspection of both Dodd's handwritten notes and the unredacted letters reveals that this evidence comports with Dodd's explanation of her prior representation.

Having determined the scope of the prior representation, the Court next asks whether "it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters," *LaSalle Nat'l Bank*, 703 F.2d at 255–56. Receipt of confidential client communications "will be presumed in circumstances which make it a likely possibility."

*Id.* at 256 (citing *Schloetter v. Railoc of Ind., Inc.*, 546 F.2d 706, 710 (7th Cir.1976)).

Here, given that Dodd's client was a municipality and the injunction was based on facts open to the public, the communication of anything confidential hardly seems likely. While defense counsel contends that the verified petition signed by Dodd and submitted to the Indiana Supreme Court suggests that she was privy to client confidences, all of the facts in that petition are matters of public record. *See* Reply Br. Exh. 7. Moreover, while the Town points to the fact that Dodd entered her appearance on behalf of Orland in front of the DNR, Dodd testified in her affidavit that "Orland was enjoined from participating in the proceedings and elected to merely monitor the proceedings until the injunction was lifted by the Supreme Court." Dodd Aff. ¶ 17(a); *accord,* McNaughton Aff. ¶ 5.

This scenario sharply contrasts with the substantial relationship found to exist in *LaSalle*. There, a former state attorney who had supervised a county's civil division later joined a private law firm. 703 F.2d at 253, 254. The private law firm sued the county on behalf of a developer over sewer access, challenging the validity of the agreement between the county and a village under which sewer access had been denied. *Id.* at 254. While employed by the state, and although he had not drafted the subject agreement, the attorney had been privy to discussions of the validity regarding similar agreements and had prepared a legal opinion about the agreement in question (although it was never completed). *Id.* The court found that it was reasonable to infer that he had received client confidences and secrets given the small office and his overall supervisory authority. *Id.* at 256.

By contrast to *LaSalle*, the context of the case here suggests (and, as discussed *infra,* the evidence bears out) that Dodd was not privy to client confidences given the limited scope of her representation [9] and the fact

---

**9.** After all, the comments to Indiana Rule of Professional Conduct 1.9 state that:

The scope of a "matter" for purposes of Rule 1.9 may depend on the fact of a particular situation or transaction. The lawyer's involvement in a matter can also be a matter of

degree.... The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

that all matters of relevance were already matters of public record. The Town maintains that this case presents a "clearer conflict of interest than that of the attorney disqualified in *LaSalle*," because whereas the *LaSalle* attorney had not actually worked on the agreement in issue, here Dodd worked on matters related to the project. Br. in Supp. at 10. This distinction, of course, misses the mark: the *LaSalle* attorney had engaged in a strategic analysis of the very issues present in the litigation; Dodd's involvement in the injunction-defense, on the other hand, was something wholly apart from the current contract dispute. Moreover, unlike the *LaSalle* attorney, there is no showing that she enjoyed any sort of supervisory authority over the case. *See also Cromley v. Board of Educ. of Lockport Township High Sch. Dist. 205,* 17 F.3d 1059, 1064 (7th Cir.1994), *Freeman,* 689 F.2d at 722 (both holding that a substantial relationship is established where attorney switches sides in the same litigation); *Nelson,* 823 F.Supp. at 1450 (reasonable to infer that confidential information was given to the attorney where the record contained evidence that the attorney's advice was actually sought). These cases likewise present a far different scenario than what we have here: Dodd first defending a municipality from suit to enjoin construction of a wastewater treatment facility on jurisdictional grounds, and then representing the engineering firm who seeks a declaration of its rights under an alleged contract to design the facility.

Contrary to the Town's position, the Court does not find that Dodd's prior involvement in the injunction defense compels the inference that she was privy to client confidences. However, even if the Court were to assume that a substantial relationship does exist, the notion that Dodd may have been privy to confidential information has been clearly and effectively rebutted, thus rendering disqualification improper.

### B. The "Clear and Effective" Rebuttal

The presumption of shared confidences that arises from the existence of a substantial relationship can be rebutted by "clearly and effectively" demonstrating that "the attorney whose change in employment created the disqualification issue was [not] *actually* privy to any confidential information his prior law firm received from the party now seeking disqualification of his present firm." *Schiessle,* 717 F.2d 417 at 420–21 (citing *Freeman,* 689 F.2d at 723) (emphasis added).

Here, Dodd denies receiving any privileged client communications or secrets in the course of her prior representation. Dodd Aff. ¶¶ 5–6, 8, 11–12. While the Town argues that an examination of Dodd's Ice, Miller billing records suggests that she actually did receive client confidences or secrets, as discussed *supra,* she carefully and comprehensively explains these entries and rebuts that notion. *See id.* ¶ 17;[10] McNaughton Aff. ¶ 5; Houghton Aff. ¶¶ 9–10. Moreover, Dodd declares that she never represented the Town before state agencies (i.e., to obtain a regulatory permit) nor examined the feasibility of the project designed by J & H, which could be relevant to the counterclaims. Dodd Aff. ¶ 17(a), (b), (c), (e); *see* McNaughton Aff. ¶ 5; Houghton Aff. ¶ 10. Finally, defense counsel's assertion during oral argument that just because Dodd drafted an affidavit for Marlene Walters, the Town's former Clerk–Treasurer, she must have been privy to client confidences is unequivocally addressed by Dodd's testimony that all of her conversations with Walters encompassed only matters of public knowledge. Dodd Aff. ¶ 17(d). An examination of case law indicates that this showing clearly suffices.

For example, the Seventh Circuit found that the accused attorney did not clearly and effectively rebut the presumption of shared confidences in *Schiessle,* 717 F.2d at 421. There, the attorney failed to respond to an affidavit filed by the prior law firm reciting that he had actually received confidential communications in that he was the partner in charge of representing the clients, had discussed the lawsuit on four occasions with one client, and he had taken part in numerous discussions at the firm regarding the litigation. *Id.* Here, of course, Dodd has testified that she was privy to no confidential commu-

---

**10.** It should be noted that none of the billing record entries noted by the Town in its reply brief is inconsistent with Dodd's previously-submitted explanation.

nications, Dodd Aff. ¶¶ 5–6, 8, 11–12; and, moreover, no affidavit has been filed as to any alleged actual confidences she supposedly received.[11]

In *LaSalle*, 703 F.2d at 257, the court found that there was no "clear and effective" rebuttal where the attorney submitted an affidavit that he had received no information specific to the agreement in question. This showing was deemed too limited, however, because information relating to similar agreements, or the county's attitude toward the agreements, was also relevant to that present litigation. *Id.* at 257. In addition, equivocal testimony that the affiant does not remember whether confidences were shared does not clearly and effectively rebut the presumption. *Donohoe*, 691 F.Supp. at 116–17. Here, by contrast, Dodd has explicitly disclaimed receiving any confidences or secrets from the client and there is no showing that she was ever involved in any other "strategic planning" as to issues related to this current litigation. Rather, on this record, she has "clearly and effectively" rebutted the presumption of shared confidences. Therefore, disqualification is not warranted.

### IV. CONCLUSION

For the foregoing reasons, the Town's motion to disqualify is DENIED.

---

**11.** Although such an affidavit (presumably under seal) is not necessary to raise the presumption of shared confidences, *see LaSalle*, 703 F.2d at 255 (citing *Schloetter*, 546 F.2d at 710), it could be used to effectively counter Dodd's denial that she was privy to any client confidences or secrets.