In re Larry and Kellie MARVEL,
Debtors.

Universal Bank, N.A., Plaintiffs,

v.

Larry and Kellie Marvel, Defendants.

Bankruptcy No. 99–12514.
Adversary No. 99–1226.

United States Bankruptcy Court,
N.D. California.

July 19, 2000.

Larry S. Myers, Law Offices of Larry S. Myers, Eureka, CA, for debtors.

Linda Schuette, Palo Cedro, CA, trustee.

### Memorandum re Sanctions

ALAN JAROSLOVSKY, Bankruptcy Judge.

## I. Introduction

Low- and middle-income debtors who are sued by credit card issuers over dischargeability do not face an even playing field. Such creditors are required to show actual fraud before they are entitled to judgment. However, a debtor who wishes to stand on his rights risks disaster if he or she loses the case. Credit card issuers usually take the position that, pursuant to *Cohen v. de la Cruz*, 523 U.S. 213, 219, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), they are entitled to add on contract rate interest and attorneys' fees if they prevail. For a debtor of modest means, loss could result in a debt problem more severe than he or she faced before bankruptcy. Moreover, few attorneys are willing to represent debtors in such actions, as debtors usually cannot afford the costs of a vigorous defense. It is therefore not surprising that many debtors choose to agree to a settlement when sued by a credit card issuer, even if the merits of the case against them are weak. Since the deck is already stacked against debtors, the court is sensitive to tactics of credit card issuers which are unfair or improper. The court is now considering sanctions against plaintiff Universal Bank and its counsel for an apparently baseless motion to disqualify debtors' counsel.

## II. Background

In this case, debtors Larry and Kellie Marvel were sued for credit card fraud by plaintiff Universal Bank. The Bank noticed the Marvels' deposition for Santa Rosa, which was 225 miles from their home in Eureka. The debtors' attorney of record, solo practitioner Larry Meyers of Eureka, arranged for a Santa Rosa solo practitioner, David Chandler, to represent the Marvels at the deposition. The Bank's reaction to this, and its subsequent motion to disqualify Chandler, are the cause for the court's order to show cause why it should not be sanctioned.

According to the Bank's counsel, Anne L. Keck, she was told by a Eureka attorney that Chandler had told him that he believed that Universal Bank was engaging in improper conduct in relation to dischargeability actions, that he believed a class action lawsuit was appropriate to stop the conduct, and that he was willing to represent debtors who were sued by Universal Bank without charge. Armed only with this hearsay, which she interpreted as ethically improper, Keck refused to allow the Marvels to be represented at the deposition by Chandler. She then filed a motion to disqualify Chandler. The court is now considering sanctions for the filing of this motion.[1]

This court has demonstrated in the past that it will not brook unethical conduct on the part of attorneys who practice before it. Moreover, the court cannot open the Yellow Pages to the "attorneys" section without becoming physically ill. However, the charges raised by Keck do not in any

---

1. The court found that Keck's refusal to let Chandler represent the Marvels at the deposition was unjustified, and that by such refusal the Bank had forfeited its opportunity to depose the Marvels. The Bank then dismissed the action. The court is not considering further sanctions for the refusal to proceed with the deposition, but is focusing only on the propriety of the motion to disqualify Chandler.

way offend the sensibilities of the court. In fact, Chandler's conduct appears to be in the *very best traditions* of a noble and oft-maligned profession. Accordingly, the court has called the Bank and its counsel to task on it own motion.

### III. Authority to Sanction

 Pursuant to § 105(a) of the Bankruptcy Code, bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court. *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir.1996). The court recognizes that it must exercise restraint in the exercise of this power. However, the court feels strongly that it must act on its own in cases like this where one side is at a disadvantage.

### IV. Propriety of Sanctions for Meritless Disqualification Motion

 A motion to disqualify counsel is not an arrow normally in the quiver of a litigant. A motion for disqualification of counsel is a drastic measure which courts should hesitate to impose except when of absolute necessity. *Schiessle v. Stephens*, 717 F.2d 417 (7th Cir.1983). They are often tactically motivated; they tend to derail the efficient progress of litigation. *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2nd Cir.1983). The moving party, therefore carries a heavy burden and must satisfy a high standard of proof (*id.*) Because of the potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny. *Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1049 (9th Cir.1985) citing, *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721–722 (7th Cir.1982). The court may sanction counsel for making a motion to disqualify opposing counsel where no evidence or facts are presented justifying the motion. *Adriana International Corp. v. Thoeren*, 913 F.2d 1406, 1416 (9th Cir. 1990). To be justified, a motion to disqualify must be based on present concerns and not concerns which are merely anticipatory and speculative. *In re Coordinated Pretrial Proceedings, etc.*, 658 F.2d 1355, 1361 (9th Cir.1981).

### V. Merits of the Bank's Motion

 At the heart of the Bank's motion to disqualify Chandler was the rather strange notion that an attorney violates Rule 1–400 of the California Rules of Professional Conduct by telling other attorneys that he is willing to undertake *pro bono* representation of certain types of clients. This is simply nonsense. Rules against solicitation bar communications directed at any former, present, or prospective *client*. There is simply no prohibition against a lawyer informing a person's *lawyer* that he or she is willing to undertake representation, let alone that he or she is available at no charge.

In 1981, the California Standing Committee on Professional Responsibility and Conduct issued a formal opinion in response to the question "May Attorney A recommend himself or herself for professional employment to Attorney B by means of an in-person or any other communication, when the purpose of the recommendation is to obtain B's client as the client of A?" The committee answered the question affirmatively. It stated that such communications are not prohibited solicitations, reasoning that they are "not delivered in person to the client, but to the client's attorney, B. A's communication to B will not necessarily ever be communicated to B's client. Even where B delivers any form of A's communication to the client, B's communication is as the client's agent, not A's.... Moreover, there are substantial benefits in promoting the freest flow of information between attorneys concerning their availability for professional employment." 1981 WL 27938, p. 5.

### VI. Sanctions

 The court has called Keck and her client to task not just because their

motion to disqualify Chandler was meritless, but because it appeared to the court that it was brought for an improper purpose. Where a motion is brought for an improper purpose, a colorable legal argument is not a basis for avoiding sanctions. *Mark Industries, Ltd. v. Sea Captain's Choice, Inc.,* 50 F.3d 730, 732 (9th Cir. 1995).

It appeared to the court and still appears to the court, despite Keck's denials, that Keck made her motion largely because she does not like Chandler. The two have squared off in at least one long-standing case which at times appeared more like a feud than a case at law. There is certainly no love lost between Keck and Chandler, but that was no reason for Keck to put the Marvels, with their limited resources, in the middle of a dispute which in no way involved them.

In addition, it now seems clear that Keck was motivated by more than just dislike for Chandler. She is clearly worried about Chandler's interest in her activities and those of her client, and saw her motion as a sort of "pre-emptive strike," in order to make Chandler's investigation more difficult and perhaps discourage him from taking any further action. Such a motive is no more justifiable than simple dislike.

V. Findings and Conclusion

From the pleadings and arguments of Keck, plus the court's observation of her conduct in this case and in others before the court, the court finds that Keck's motion to disqualify Chandler was without merit and brought for two improper reasons: dislike of Chandler engendered in other cases, and a desire to make Chandler's investigation of her client's conduct more difficult. The court concludes that sanctions against Keck and her client are necessary in order to punish them for misuse of a disqualification motion and deter them from future improper conduct. Accordingly, the court will order that Keck and the Bank shall jointly and severally pay to the Marvels the sum of $2,000.00. Counsel for the Marvels shall submit an appropriate form of order.