The **QUAKER OATS COMPANY**, Plaintiff,

v.

**UNI–PAK FILM SYSTEMS, INC.**, Defendant.

No. 87 C 2278.

United States District Court, N.D. Illinois, E.D.

Nov. 19, 1987.

Deborah A. Lathen, Quaker Oats, Chicago, Ill., John S. Kingdon, William E. Wallace, III, Thomas J. Horton, Howrey & Simon, Washington, D.C., for plaintiff.

D. Patterson Gloor, Kevin G. Burke, Annette J. Regos, Cassiday, Schade & Gloor, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

The defendant, Uni–Pak Film Systems, Inc. ("Uni–Pak"), has moved to disqualify the law firm of Howrey & Simon ("Howrey") from continuing to represent the plaintiff, The Quaker Oats Company ("Quaker"), in this action. Quaker contends that Uni–Pak's motion is unwarranted by law or fact, and requests that we sanction Uni–Pak pursuant to Fed.R.Civ.P. 11. For the reasons stated below, both motions are denied.

## I. FACTS

In 1981, Mead Packaging Division ("Mead") retained Howrey to represent it in a dispute arising out of allegedly inaccurate and deceptive advertising by one of Mead's competitors concerning Mead's "Wrapcap" system.[1] To this end, James F. Davis ("Davis"), an attorney with Howrey, met with Mead employees Frank Ciuba ("Ciuba"), James Huckaby ("Huckaby"), Gordon Wilkinson and John Williams and learned confidences relating to the Wrapcap system. For reasons unimportant to the present case, this matter was never litigated.

Some time after these events, Ciuba and Huckaby left Mead and joined Uni–Pak as president and vice president, respectively. In December of 1982, Ciuba and Huckaby, on behalf of Uni–Pak, entered into a licens-

---

1. The Wrapcap system is a machine which automatically wraps containers in a clear plastic sheeting (known as "shrink wrap" because it is heated in order to shrink it around the containers).

ing agreement ("Agreement") with Mead, under which Uni–Pak gained the exclusive, non-assignable right "to use, market and sell licensed machines, * * * includ[ing] the Wrapcap system machines." Uni–Pak's Supporting Mem. at 5. The Agreement also provided that, upon payment of a certain amount of license fees to Mead, title to the licensed machines will pass to Uni–Pak. There is no suggestion, however, that Uni–Pak now possesses title to these machines.

Uni–Pak, after entering into the Agreement, sold a number of Wrapcap system machines to Quaker which, according to Quaker's complaint, do not operate properly. Quaker brought this lawsuit against Uni–Pak and, in addition to employing in-house counsel, retained Howrey to represent it. Based upon Howrey's prior representation of Mead, Uni–Pak now contends that Howrey's representation of Quaker in this action violates Canons 4 and 9 of the Code of Professional Responsibility ("Code").

## II. DISCUSSION

Disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir.1982). This hesitancy stems from the recognition that a litigant's right to counsel of his choice is of great importance and should not be disturbed unless a specifically identifiable impropriety has occurred. *Panduit Product Corp. v. All States Plastic Mfg. Co., Inc.,* 744 F.2d 1564, 1576 (Fed.Cir.1984) (applying Seventh Circuit law). With this in mind, we now address Uni–Pak's specific arguments for disqualifying Howrey from representing Quaker in this action.

### A. Canon 4

Uni–Pak first contends that Howrey's involvement in this lawsuit violates Canon 4

of the Code, which provides that: "A Lawyer Should Preserve the Confidences and Secrets of a Client." As we noted above, there is no question that Howrey previously represented Mead and received confidences from Mead regarding the Wrapcap system machines. It is also undisputed, however, that Howrey has made full disclosure of this situation to Mead, and that Mead has consented to Howrey's continued representation of Quaker in this case. *See* Affidavit of James F. Davis, par. 7. Mead's consent is significant. Disciplinary Rule 4–101(C)(1) provides that "[a] lawyer my reveal confidences or secrets with the consent of the client or clients affected, but only after full disclosure to them." One might conclude from this (as we do) that Howrey has not violated Canon 4. Uni–Pak, however, does not.

■ In response to Quaker's rather straightforward argument, Uni–Pak makes two arguments, one of which is interesting, and one of which is not. Both are unsuccessful. Uni–Pak's first contention is that Uni–Pak, and not Mead, is the proper party to object to Howrey's involvement in this action because the Agreement "places Uni–Pak in the shoes of Mead in relation to the Wrapcap business." Uni–Pak's Reply at 6. As we understand it, Uni–Pak argues that as a result of the Agreement, Uni–Pak should be considered Howrey's former client; and Uni–Pak does not consent to Howrey's continued representation of Quaker. Uni–Pak cites no authority in support of this position,[2] however, and we do not believe that a mere licensee, such as Uni–Pak, which possesses no ownership rights in the licensed property, stands in the shoes of the licensor vis-a-vis an attorney who previously represented the licensor in a dispute concerning the subject

---

**2.** Although Uni–Pak is correct in arguing that a Canon 4 violation does not require that the confidences involved come from a "client" in the strict sense of that term, (*see Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1268 (7th Cir.1983)), none of the authorities it cites addresses a situation where, as here, the person or entity which imparted the confidences (client or not) later consents to the challenged representa-

tion. Nor do any of these authorities stand for the proposition that a licensee (as opposed to a successor corporation which purchases an existing corporation) gains the right to object to the licensor's consent to the use of confidences which the licensor has provided his attorney in prior representation simply on the basis that the license agreement involves the same subject matter as the previous representation.

matter of the license agreement. Therefore, we hold that Uni–Pak is not a former client of Howrey's, and Mead's consent to Howrey's representation of Quaker in this lawsuit is valid.

■ Uni–Pak's second argument is a pale variation of the first: Uni–Pak asserts that it should be considered Howrey's former client because its "key personnel (namely, Ciuba and Huckaby) are the same as those who operated the business for Mead [and] provided confidential information to" Howrey. Uni–Pak's Reply at 6. While this may be true, it is well settled that an attorney who represents a corporation (such as Mead) owes his allegiance to the corporate entity and not to the individuals who comprise it (such as employees like Ciuba and Huckaby). *Westinghouse Electric Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1318 n. 9 (7th Cir.1978). Thus, an attorney's allegiance does not follow a corporation's employees as they depart their corporate positions and travel unfettered through the marketplace to new employment. Here, Howrey owed its allegiance to Mead, not Ciuba or Huckaby, and their sojourn from Mead to Uni–Pak did not change that. In light of Mead's consent to Howrey's representation of Quaker in this case, we hold that Howrey has not violated Canon 4.

### B.   Canon 9

■ Uni–Pak makes the alternative argument that Howrey's representation of Quaker in this action "has the appearance of professional impropriety", (Uni–Pak's Supporting Mem. at 12), and therefore that Howrey must be disqualified under Canon 9.[3] We do not believe that there is an appearance of impropriety where, as here, the challenged attorneys have not switched sides, and where the former client whose confidences are allegedly imperiled has expressly consented to the challenged representation after full disclosure of the surrounding facts.

3. Canon 9 provides that: "A Lawyer Should

### C.   Quaker's Motion for Sanctions

■ Before concluding, we believe it is necessary to address Quaker's motion for Rule 11 sanctions against Uni–Pak. Although we are aware that "[a] serious Rule 11 motion is not a gnat to be brushed off with the back of the hand", (*Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1084 (7th Cir.1987)), Quaker's is not a *serious* Rule 11 motion. Rather, it is an increasingly typical example of the near-boilerplate sanction requests which are included in almost every response to every document filed with this court. Here, Uni–Pak argued without success that it was a derivative client of Howrey based upon Uni–Pak's business relationship with Howrey's former client, Mead, and based upon the emigration of certain Mead employees to Uni–Pak. These arguments, although ultimately unmeritorious, were not frivolous on either a legal or factual basis; and both were made in an effort to maintain the integrity of this court and the legal profession.

■ As we see it, it is *Quaker's* Rule 11 motion, and not Uni–Pak's motion for disqualification, that is questionable. *See In the Matter of Xonics, Inc.*, 813 F.2d 127, 133 n. 4 (7th Cir.1987). Given the growth of satellite litigation under Rule 11, we think that each Rule 11 motion must be thoroughly scrutinized in order to determine if it is itself warranted by existing law and fact; and should we reach the conclusion that it is not, we shall assess an appropriate sanction. Nevertheless, since Uni–Pak did not respond to Quaker's Rule 11 motion, and since we desire only to make known our dissatisfactions with the abuses of Rule 11, sanctions are unnecessary here. But: In the future counsel would do well to choose their Rule 11 battles with more care.

### III.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

Avoid Even the Appearance of Impropriety."

(1) Uni–Pak's motion to disqualify Howrey from representing Quaker is DENIED; and

(2) Quaker's motion for sanctions pursuant to Fed.R.Civ.P. 11 is DENIED.