Locke, J.
This matter comes before the Court on Defendant Alstom Power, Inc.’s. (“Alstom”) motion to disqualify John D. Marshall, Jr., and his law firm, Griffin, Cochrane & Marshall, P.C., as counsel for Plaintiff Limbach Company (“Limbach”). The Court conducted a hearing on Alstom’s motion on May 9, 2003 and took the matter under advisement. For the reasons set forth below, the motion is DENIED.

BACKGROUND

In June 1999, ABB Power Generation, Inc. (now, Alstom) contracted to construct a 580 MW combined-cycle power plant in Blackstone, Massachusetts. Al-stom entered into a subcontract with Dick Corporation to oversee aspects of the design and construction activities and Dick, in turn, entered into subcontracts with Comstock, Inc. for electrical work and Limbach Company for mechanical work on the project. The Alstom-Dick contract was for $56 million, which included $5.98 million under the Dick-Limbach subcontract.
In April 2001, Dick, Comstock and Limbach entered into a written “Joint Prosecution and Defense Agreement” relating to any claims arising out of the Blackstone project. The agreement served two primary purposes: it permitted the exchange of information and materials by and between the parties while preserving claims of confidentiality and privilege; and it provided that each party would exhaust their claims against Alstom prior to instituting any claim or legal action against one another. Thereafter, in July 2001, Dick, Comstock and Limbach each filed notices to establish mechanic’s liens on the project property. The liens totaled $114 million, of which Limbach’s lien represented a claim for over $25 million. In response, Federal Insurance and American Home Assurance posted bonds to dissolve the liens.
On November 2, 2001, Dick, Comstock and Limbach joined as plaintiffs in the instant litigation. Each plaintiff was represented by separate counsel, with Attorney John Marshall and the Law Firm of Griffin, Cochrane & Marshall representing Comstock, and the Law Firm of Goodwin, Proctor & Hoar representing Limbach.[2] After commencing litigation in the Superior Court the case took several turns. In the summer of 2002, all parties agreed to attempt a resolution of the case through mediation conducted by Attorney Randall W. Wulff of Washington, D.C. Medi *350 ation sessions occurred on August 5-7, 2002, and resulted in settlement agreements in principle as to claims against Alstom and its bonding companies brought by Dick and Comstock. Mediation efforts involving Alstom and Limbach were unsuccessful and ended abruptly.
The Alstom-Comstock settlement was negotiated for Comstock by Attorney Marshall and his associates at Gilbert, Cochrane & Marshall, and by Attorney Shelly Ewald of the law firm, Watt, Tieder, Hoffar & Fitzgerald for Alstom.[3] Although the final settlement agreement was deemed confidential by the parties, it found its way in draft form into the public arena as a result of a Chapter 11 bankruptcy action involving Comstock’s parent corporation, Railworks Corporation. Comstock was a listed debtor in the Chapter 11 proceedings and consequently the settlement required approval of the Bankruptcy Court. A draft copy of the agreement was provided to the Bankruptcy Court and was also served on over 150 creditors and counsel on or about August 20, 2002. It was subsequently approved.
The essential terms of the settlement agreement were reached during, and immediately after the August 2002 mediation. Thereafter, between August 8th and the end of September 2002, counsel for Comstock and Alstom (Attorneys Marshall and Shelly L Ewald, respectively, and their associates) hammered out the final details of the agreement, drafted release forms, and sought client signatures. The agreement was executed toward the end of October 2002 but referenced its effective date as August 8, 2002.
Pursuant to the settlement agreement, Comstock and Alstom filed a joint motion for separate and final judgment in this Court on December 13, 2002. The Court allowed the motion on December 18, 2002. One month later, Attorney Marshall notified counsel for Alstom that he and his firm had been retained by Limbach to pursue its claims. Alstom responded by filing the instant motion to disqualify Marshall and his firm, claiming that his representation of Limbach constitutes a conflict of interest and breach of fidu-ciaiy obligations.

DISCUSSION

The choice of an attorney is one of the most sacrosanct rights in the American legal system and courts are loath to interfere in the exercise of that choice absent compelling cause. See, e.g. Adoption of Erica, 426 Mass 55 (1997); Masiello v. Perini Corp., 394 Mass 842, 848 (1985) (quoting the Seventh Circuit Court of Appeals, “Disqualification as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary,” Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir. 1982)). The bar for disqualification is set high, requiring that “the record [be] clear that there is a substantial risk of material and adverse effect on the interests of the present or former client.” Erica, 426 Mass. at 65.
A request for disqualification ordinarily presents itself when counsel is representing a client whose interests are, or may become, adverse to those of another present or former client. The Massachusetts Rules of Professional Conduct were enacted in part to deal with this issue. Rule 1.9(a) provides that “[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interest of the former client unless the former client consents after consultation.” Applied to the present case, Rule 1.9 does not appear to present a barrier to Marshall’s representation of Limbach. Attorney Marshall and his firm were prior counsel to Comstock, not Alstom. Therefore, Comstock rather than Alstom would ordinarily be the “client” entitled to raise a conflict claim. As represented at the motion hearing and reflected in a Declaration by Marshall filed in response to Alstom’s motion for disqualification, both Limbach and Comstock have been fully informed and consulted about Marshall’s dual representation and both have consented.[4]
Alstom claims it has standing to assert the conflict claim on two grounds. First, it asserts that the settlement agreement between Alstom and Comstock contains a cooperation clause requiring Comstock to cooperate with Alstom in defending against future claims. Although the final Settlement Agreement has been deemed confidential by the parties, it has been provided to the Court under seal. The agreement imposes a duty on Comstock to cooperate with Alstom but only in limited areas, regarding access to records and employees. After consideration the Court does not believe that Comstock’s duty to cooperate with Alstom is in any way compromised by Marshall’s current representation of Limbach since the agreement does not contemplate that Comstock will be actively involved in future litigation such that Comstock’s counsel would be a parly to Alstom’s litigation strategy or attorney work-product. In short, the Court does not find that Alstom is likely to incur any prejudice to its expectation of cooperation by Comstock based solely on Marshall’s current role as counsel to Limbach.
Alstom’s second, and more forcefully asserted argument for disqualification lies in the claim that during settlement negotiations with Comstock, counsel for Alstom (Ewald) disclosed to counsel for Comstock (Marshall et al.) confidential information about Limbach’s claims against Alstom and Alstom’s intended litigation strategy. In an affidavit filed with the motion for disqualification, Attorney Ewald references a number of occasions where she conferred with Marshall about the Limbach claims. At the hearing, when asked by the Court about the time period when such conversations occurred, Ewald stated that they took *351 place in the September-October 2002 time-frame, leading up to the execution of the Comstock settlement agreement and releases.
After reviewing the submissions of the parties and hearing argument, the Court is not persuaded that privileged or confidential communications occurred which would prejudice Alstom if Attorney Marshall now represents Limbach. First, as reflected in the Comstock Settlement Agreement itself, there was an express acknowledgment that no privileged discussions had occurred between the parties or their counsel, and that any agreement for confidentiality was prospective in nature, if triggered by future events. Attorney Marshall, in affidavits filed with the Court (publicly and under seal) emphatically denied seeking or receiving any privileged information from Alstom or any specific confidential information that could be used to the benefit of Limbach and the detriment of Alstom. Marshall’s assertion that no protected information was given him by Alstom or its attorneys is corroborated not only by the provisions of the Settlement Agreement described above, but by other correspondence between Marshall and Ewald, particularly the return by electronic mail of a proposed pleading that Alstom intended to file in Court and was sharing with Marshall in his capacity as Comstock’s attorney. Marshall, in an e-mail sent on October 31, 2001, returned the document “unopened,” informing Ewald that he did not want to be “privy to Alstom’s work product” in order to remain conflict-free.
In rebuttal, Alstom relies on an Affidavit by its counsel, Attorney Ewald, that describes the process leading to the Alstom-Comstock settlement. Although Ewald asserts that she disclosed Alstom’s intended litigation strategy against Limbach, her affidavit is woefully lacking in specific detail regarding the dates of confidential communications, the purpose for which such disclosures were made, the specific information that was disclosed, and whether there was an agreement that such disclosures were intended to be treated as privileged or confidential.[5] It is not clear to the Court what the purpose might have been served by Alstom disclosing its entire litigation strategy against Limbach to Comstock, even more so where Comstock was known to be party to a cooperation agreement with Limbach, and where the likelihood of any future action by Limbach against Comstock was remote.
Weighing all of the information presented in connection with the motion to disqualify, the Court is not convinced that there is a substantial risk of material and adverse effect on the interests of Comstock (which has waived the conflict) or Alstom, sufficient to require the disqualification of Attorney Marshall or the Law Firm of Griffin, Cochrane & Marshall.

ORDER

Defendant Alstom’s Motion to Disqualify John D. Marshall, Jr., and Griffin, Cochrane & Marshall as Counsel for Plaintiff, Limbach Company, is hereby DENIED.

Each party had also engaged local counsel.

As the result of mediation in August 2002, Dick and Comstock, as plaintiffs, and Alstom (and related entities) as defendant, considered entering into a tripartite settlement agreement but ultimately negotiated separate agreements.

Alstom has not contested the validity of Comstock’s consent to Attorney Marshall’s representation of Limbach and there is no evidence anywhere in the voluminous submissions by the parties suggesting any infirmity in Comstock’s knowing waiver of a claim of conflict. Consequently the Court finds, for purposes of the instant motion only, that Comstock has validly consented to Marshall’s appearance for Limbach.

Contained in some of the many pleadings filed by the parties relating to the disqualification motion are suggestions by Alstom and Limbach (through Marshall’s affidavits) that they were considering a request that the Court conduct an in-camera inquiry with counsel regarding the specific communications that Alstom claims occurred. Such a proceeding likely would have been helpful to the Court but neither party made a request for an in-camera hearing or otherwise sought an evidentiary hearing on the motion.